## MITCHELL v. CRAMP.

(Circuit Court of Appeals, Third Circuit. October 15, 1925.)

No. 3302.

1. Contracts ⊕⇒147(1)—Character of transaction is fixed at its inception by intention of parties.

Character of a transaction is fixed at its inception by intention of parties.

2. Sales ⊕⇒6—Conveyance of partnership assets to wife of partner who assumed firm debts held absolute and not as collateral.

Conveyance of assets of bankrupt brokerage partnership to wife of one of partners, who paid all of firm debts to save her husband's name and business reputation, *held* absolute and not merely as collateral, with resultant liability to account on unforeseen appreciation in value of such assets.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by Howard E. Mitchell against Alice W. Cramp, in her own right and as executrix under the will of Theodore W. Cramp, deceased. Decree on demurrer to bill for

defendant, and complainant appeals. Affirmed.

E. Spencer Miller, of Philadelphia, Pa., for appellant.

Walter Biddle Saul, Francis H. Bohlen, Jr., and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Howard E. Mitchell, appellant, and Theodore W. Cramp, late husband of appellee, who was defendant below, were engaged in the brokerage business in Philadelphia on and prior to May 4, 1914, under the firm name of Cramp, Mitchell & Co. The company had for some time been financially embarrassed. A petition in bankruptcy was filed against it and the partners on this date. The firm and the partners were insolvent, and shortly thereafter were adjudicated bankrupts. A receiver was appointed for their estates.

In order to save the good name and business reputation of her husband, Mrs. Cramp, doubtless in accordance with some understanding with Cramp and Mitchell, came to their aid, and paid the debts of the firm and of her husband; Mitchell's individual debts being paid out of his private estate. Thereupon all the assets were turned over to Mrs. Cramp. After all the debts had been paid, the bankruptcy proceedings were withdrawn by leave of court upon the application of Cramp and Mitchell. They therefore did not receive a discharge in bankruptcy. But Mitchell appealed to her for "a release from his debts held by her." She agreed to release him upon his written admission that he was under moral obligation to pay her his part of any balance of the firm debts remaining after the assets had been applied to the payment of them.

She paid the indebtedness of the firm and of her husband largely, if not altogether, with her own money, and did not then dispose of the securities. To pay the debts admittedly required a great deal more money than she then could have realized from the sale of all the assets. The appellant evidently did not think that she could dispose of the assets for enough to pay the debts, otherwise he would not have appealed to her for a release and would not have signed the written admission that he was under moral obligation to pay his share of the "balance" of the debts. Through fortuitous circumstances entirely unexpected, the securities constituting the bulk of the assets

of the bankrupt estate, which she had held at her own risk, marvelously appreciated so that they exceeded in value the firm's indebtedness. He then requested an accounting of her administration of the assets, and, when this was denied, he finally, on May 5, 1924, 10 years after the institution of bankruptcy proceedings, brought this suit and demanded an accounting which should set out the securities and assets she received, the firm indebtedness, the securities she had sold with the dates and prices, a stated account between the members of the firm and the firm, and prayed that a decree be entered requiring her to pay over to him, as liquidating partner of the firm, the remaining assets of the firm. The respondent demurred to the bill. The demurrer was sustained, and the complainant appealed.

The demands of the appellant are predicated upon the assumption and statement that the assets were turned over to Mrs. Cramp as collateral, and that their market value had appreciated "greatly in excess of the debt secured." The appellant then, but not until then, offered to pay the debts and take the collateral.

The nature of the transaction between Mrs. Cramp and the firm partners is the real question involved. Were the assets of this insolvent firm transferred to Mrs. Cramp merely at collateral out of which she was to pay the debts and return any balance left over to the partners? If they were, the decree should be reversed. Or, on the other hand, did they relinquish all title to the assets and consent that they be turned over to her as her own upon the condition, express or implied, that she pay all the debts of the firm, and, if the assets were insufficient to do that, then pay the balance out of her own funds? If this was the understanding, the decree should be affirmed.

[1, 2] It is true, as counsel urges, that the character of a transaction is fixed at its inception, and is what the intention of the parties makes it. 1 Jones on Mortgages, § 263. The character of the assets, what they were, in her possession, was fixed by the intention of the parties at the time the transaction was made. The release of Mitchell by her from his debts only throws light on the transaction, and did not change the character of these securities unless this release was the result of a new agreement. There was without doubt some agreement, some understanding, between the parties. It is unthinkable that Mrs. Cramp would assume the liabilities of this firm and take over the assets, or that the firm partners

would permit her to do it, and withdraw the bankruptcy proceedings, unless there was an understanding between them. What the intention, the understanding, was must be determined from the facts alleged in the bill.

It is important to keep in mind the circumstances under which this transaction took place. The firm and its members were hopelessly insolvent, and their purpose was to turn over all the assets for the payment of debts. It does not appear that any one had the remotest idea that the assets then were, or ever would be, sufficient to pay the firm's debts. Mrs. Cramp's apparent motive appears to have been to save her husband's name and business reputation, though at a considerable financial loss. The wildest imagination did not forecast the World War and its effect upon these securities.

The debts had to be paid and the affairs of the firm wound up immediately following the formation of a common understanding between the parties. The appellant knew that the assets were insufficient to do this, for he had in mind an unpaid "balance." It must have been the intention of the partners that she use the assets in paying the debts, for there is no allegation or even hint that she was to do it entirely out of her own property without recourse to the assets of the firm. If this were not so, there would be no logical explanation of the unpaid "balance." There is no allegation that the assets were to be held by her as collateral for years to come, in the hope that they would increase in value and some day in the future the partners would embark in a successful enterprise and be able to redeem the collateral. On the contrary, the appellant expressly alleges that there was no written agreement and no direct stipulation that these assets were turned over to her as collateral. He does, however, state that he "is advised, believes, and therefore avers that, in so taking over the debts owing by the firm, and all its assets, and those of its members responsible for its liabilities, there attached to the title of the said Alice M. Cramp the qualification that the same was collateral only for said debts." But this is a mere legal conclusion, and not the statement of a fact. It is, however, alleged that Mrs. Cramp stated to complainant "by word of mouth, before she had consummated the transfer to herself of all said assets, that her object was to make good from the property she acquired from the firm and its members, the amount of her disbursements, and she did not desire to make a profit." On no reasonable probability could any one then have figured out how she could possibly make a profit. And just how and when she was to make good her disbursements out of the assets is not alleged. The complainant presumably alleged every fact within his knowledge which would support his contention. But there is nowhere a hint that either member of the firm asked or cared how she was to make good her disbursements or that either ever hinted to her that the assets were transferred to her as collateral or that they or either ever expected to redeem them. If such had been their intention, some statement of that fact would then have been made, and, if it had been made, it would have been alleged in the bill. They could not pay their creditors, and were glad to be relieved of the burden of these debts, by bankruptcy, if need be, but better still by the voluntary payments in full by Mrs. Cramp of all the creditors. The withdrawal of the bankruptcy proceedings and the payment of the debts by her, the appellant alleges, tended materially to his advantage. The members of the firm doubtless understood and intended that she would make good her disbursements, to the extent she could, out of the property turned over to her. This they expected to be presently done, and they accordingly relinquished all their right and title in and to the property in order that she might do it. It was a happy transaction for everybody except Mrs. Cramp, and every fact surrounding the transaction indicates that, when these assets were transferred to her, it was the intention of all three, Mrs. Cramp, her husband, and the appellant, that they were hers to use as she desired to make good her disbursements, and that both members of the firm abandoned all claim in and to them. The insufficiency of the property to pay the debts, the inactivity of the appellant (except his appeal to be released from his debts to her) until by unforeseen circumstances the assets appreciated in value in excess of the debts, and all the allegations generally, force this conclusion. Waterman v. Brown, 31 Pa. 161; Wehrle v. Bank, 221 Mass. 585, 109 N. E. 367.

We find it unnecessary to discuss the other questions raised.

The decree is affirmed.