SHERILL BABCOCK, Appellant, v. A. E. RIEGER, LOUIS SINGER and MAX BRENNER.—58 S. W. (2d) 722.

Court en Banc, March 21, 1933.

*Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

*Frank M. Lowe, Ringolsky, Boatright & Jacobs, I. J. Ringolsky. Wm. G. Boatright, Harry L. Jacobs* and *D. S. Millman* for respondents.

COOLEY, C.—This suit was brought by plaintiff against defendants Rieger and Singer. Upon his own motion Brenner was permitted to come in as a party defendant. Judgment was for the defendants and plaintiff appealed.

Plaintiff owned a business building in Kansas City, Missouri, which he leased to Brenner for a term of ten years beginning August 1, 1922, Brenner agreeing to pay as rental $1000 on the first of each month in advance for the first six years and $1250 per month thereafter, plus certain taxes. Rieger and Singer, in writing attached to the lease, guaranteed the payment of such rent and taxes to an amount not to exceed $6000. The lease contained the following clause:

"6. If the premises hereby let shall, without fault of Lessee be destroyed or be so damaged as to become wholly or partially untenantable by fire or by providential means, then, if the Lessor shall by writing delivered to Lessee within sixty (60) days after such damage or destruction, elect to rebuild or repair, this lease shall remain in force and Lessor shall rebuild or repair said premises within a reasonable time after such election, putting premises in as good condition as they were at time of destruction or damage and for that purpose may enter said premises and rent shall abate during time said premises are untenantable; but if Lessor does not elect as aforesaid to rebuild or repair, then Lessor shall have possession of said premises hereby let and Lessee shall deliver and surrender

534

to Lessor such possession and this lease shall become void and the term hereby created end; and upon such delivery and surrender being made or upon the recovery of said premises by Lessor the obligation to pay rent shall cease, but until such delivery and surrender or recovery the obligation to pay rent shall not cease.''

On January 4, 1925, a fire occurred which damaged the interior of the building rendering it, as stated in defendants' answer, ''partially untenantable'' and also doing considerable damage to Brenner's stock of merchandise. Brenner remained in possession, keeping his goods in the building for the purpose of adjusting with insurance companies his loss on the goods, until the latter part of February. On February 26, about the time Brenner completed his adjustment with the insurance companies and turned over his stock to them in the settlement, plaintiff in writing notified Brenner that he elected to repair the building and continue the lease in force. Prior to giving such notice plaintiff had demanded the January and February rent and Brenner had given plaintiff's agent an order for the amount on the insurance company, which order was honored and the amount paid about March 6. On March 9, Brenner paid plaintiff's agent the balance of the rent due to that date and turned over to said agent the keys to the premises. Defendants claim that Brenner surrendered possession as a termination of the lease and that the agent accepted such surrender. Plaintiff claims that the turning over of possession was made and accepted only for the purpose of enabling plaintiff to make the necessary repairs. Plaintiff thereupon repaired the building, putting the premises in as good condition as before the fire, abated the rent for the period, about two weeks, so occupied in repairing, and notified Brenner that the building was so repaired and ready for his occupancy under the lease. Brenner refused to occupy the premises or to recognize the lease as any longer in force.

This suit was instituted December 8, 1925, to recover of the guarantors, Rieger and Singer, the sum of $6000, being the full amount for which, under their guaranty, they could be held liable; the plaintiff alleging in substance that Brenner owed him a total of $8562.20, being rent for the months of January to July inclusive, and certain taxes which Brenner was to pay, less a credit of $2790.34. The evidence showed that said credit item was made up of the rent paid for the period from January 1 to March 9, and $500 abatement of rent for the two weeks occupied in repairing. Plaintiff's petition states purely a cause of action at law triable to a jury.

After first having filed separate general denials, defendants Rieger and Singer filed a joint ''amended answer and cross petition'' in which, after a general denial, they averred in substance: Defensively, that the guaranty was signed by them without consideration after

the lease had been executed and delivered, wherefore they were never bound; it sets out clause 6 of the lease, alleges that a fire occurred January 4, 1925, which damaged the leased premises and rendered them "partially untenantable" and that thereupon the lease by its terms became void and terminated upon surrender of possession to the lessor unless the lessor, within sixty days after the fire elected to repair, in which event he became entitled to enter for such purpose and the rent should, "in such event only," abate during the whole time the premises "were thus wholly or partially untenantable;" that lessor was not entitled to collect rent after the fire unless he intended not to repair and not to give notice of election so to do; that if he intended not to repair he was entitled to collect rent for the sixty days after the fire and at the end of such period the lease by its terms would terminate and the obligation of lessee to pay rent and taxes would cease; that following the fire "plaintiff conceived a plan and method whereby he sought to defraud lessee and defendants," said plan being that he would "represent and pretend" that he did not intend to repair and would demand the rent during the sixty day period following the fire and, having collected same, would then, just before the expiration of such period, give notice of intention to repair and seek to continue the lease in force, he knowing that he was not entitled both to collect such rent and to elect to repair; that pursuant to such "scheme to defraud," plaintiff demanded the rent for January and February, threatening suit by attachment and garnishment if it was not paid, and that "by so demanding the payment of said rents" and threatening suit therefor, the plaintiff "pretended that it was not his intention to repair  .  .  .  and elected not to do so but to permit said lease to become void pursuant to the terms thereof;" that the lessee, actuated by such demand for rent and threats of suit therefor and believing plaintiff had elected not to repair, gave an order February 26, 1925, upon his insurance companies to pay said $2000 rent for January and February, pursuant to which order said sum was on March 6 paid to plaintiff; that on or about March 9, plaintiff demanded of lessee and the lessee paid him $290.34, the balance of rent due "for the full sixty day period following said fire" and at that time delivered to plaintiff's agent the keys to the premises and surrendered possession of the premises to plaintiff and plaintiff accepted such surrender; that plaintiff then repaired the premises and thereafter demanded that lessee pay rent from the time repairs were completed; that the guarantors did not, by their guaranty, agree that plaintiff should have the right, upon the premises becoming wholly or partially untenantable by fire, to collect rent for the sixty days following the fire and then after collecting same "for the first time elect to repair" and continue the lease in force and that plaintiff

"by his actions as herein set forth" elected to permit the lease to terminate "pursuant to the terms thereof" and waived the right to elect to repair and continue the lease in force; that plaintiff "breached and violated" the terms of the lease and guaranty by so attempting both to collect said rent and to continue the lease in force; and that "by so fraudulently pretending and representing" that he did not intend to repair and demanding and collecting said rent he had lost the right to hold the guarantors, and that "said alleged guaranty is in equity and good conscience entitled to be canceled." Then follow certain allegations that bear upon the amount rather than plaintiff's right to recover at all which, in view of the disposition we shall make of the case, need not be noticed.

Affirmatively, the amended answer and cross-petition alleged in substance: That plaintiff is contending that the lease has not been terminated and is still in force and effect; that the leased premises are "liable at any time to be transferred, either by voluntary act of plaintiff or by operation of law;" that defendants (guarantors) "are liable to have other suits brought against them" by plaintiff or some successor to his interest, and "are liable to be subjected to a multiplicity of suits on account of said lease and alleged guaranty;" and that plaintiff, if defeated in this action, "will unless prevented by a court of equity" continue to harass defendant guarantors by suits and claims that they are liable for rent or taxes; that they have no adequate remedy at law and that plaintiff "is attempting to use said alleged guaranty unfairly and wrongfully;" wherefore they pray that the guaranty be canceled and declared null and void, and that plaintiff, his heirs, administrators, executors and assigns be enjoined from instituting any suit against said defendants based on or arising out of the guaranty, and for general relief.

Upon filing said amended answer and cross-petition said guarantors, then the only defendants, moved that the cause be transferred from the law docket to the equity docket of the court, which motion the court sustained over plaintiff's objections, plaintiff excepting. Thereafter and also over plaintiff's objections and exceptions, the lessee, Brenner, asked and was by the court permitted to come in as a party defendant and he thereupon filed a pleading which is practically a duplicate of the guarantors' amended answer and cross-petition except that it asks cancellation of both lease and guaranty. Its allegations otherwise are essentially the same. Plaintiff moved to strike out the prayer for cancellation of the lease because not germane to plaintiff's cause of action and because it asked relief upon a separate and distinct cause of action from that stated in the petition and injected into the case a collateral issue. That motion was overruled, plaintiff excepting. Plaintiff then filed replies to the pleadings of all three defendants. He did not amend his petition

nor at any time ask any relief against Brenner. Upon the issues thus framed the case was tried by the court as an action in equity, resulting in a judgment for defendants, denying plaintiff recovery and granting defendants the equitable relief prayed by them.

█ The question first requiring solution is presented in appellant's contention that the court erred in holding that the guarantors' amended answer and cross-petition converted the action into one in equity triable to the court and in transferring the cause to the equity docket, denying plaintiff the right to have the cause tried to a jury as an action at law. This question is to be determined from the pleadings. [Ebbs v. Neff, 325 Mo. 1182, 30 S. W. (2d) 616, 620.] But first it is necessary to consider respondents' suggestion that it has already been determined by this court. The appeal herein was granted to the Kansas City Court of Appeals wherein an opinion was written reversing the judgment and remanding the cause. On certiorari that opinion was quashed by this court, the decision being by Division One, reported in 326 Mo. 702, 32 S. W. (2d) 760, on the ground that the Court of Appeals had no jurisdiction. Thereupon the case was certified to this court. In the opinion of this court (326 Mo. 702, 32 S. W. (2d) 1. c. 761) there is an observation in substance that the cross-petition converted the action into a suit in equity. But we think that statement was meant to apply to and characterize the judgment rendered by the trial court and from which the appeal had been taken, in determining the question of jurisdiction of the appeal rather than as an adjudication of the sufficiency of the cross-petition to state a cause of action for equitable relief and thus convert the action into a suit in equity. The actual holding in the certiorari case is shown by the following, 1. c. 762:

"The Court of Appeals based its holding that the amount in dispute was within its jurisdiction on the ground that the cross-bill did not state facts entitling defendant Brenner to equitable relief. But the trial court held that the cross-bill did state such a cause of action, and by its judgment awarded the very relief prayed therein. And it was for the purpose of overturning that judgment, a judgment based on the cross-bill, that the appeal was taken. The value of the relief given defendant Brenner by such judgment was clearly the amount in dispute for jurisdictional purposes.

"Being without jurisdiction the Court of Appeals could not determine whether the cross-bill stated a cause of action or whether it was germane to the action pleaded in the petition; it could not first decide the merits of the controversy in order to determine whether it had jurisdiction of the appeal."

This court further said, in response to the request of counsel that it determine the controversy on the merits if it held the Court of Appeals to have been without jurisdiction, that it could not be done:

that: "The writ of certiorari . . . reaches only questions of jurisdiction. It does not deal with the merits of controversies between the litigants. It acts upon judicial bodies and their proceedings, not upon private controversies," and that "all that can be done under it is either to quash or to refuse to quash the proceedings of which complaint is made." We think the question of the sufficiency of the answers and cross-bills to convert the suit into one in equity is still open.

It is not disputed that if the defendant, in a suit wherein the petition states a cause of action at law, sets up an equitable defense which entitles him to affirmative relief and prays for such relief, the whole case is converted into a suit in equity. Neither can it be doubted that the cancellation of instruments, such as the lease and guaranty in question, is a matter of equitable cognizance. But a *prayer* for affirmative equitable relief amounts to nothing unless the facts alleged authorize such relief. As a general rule where suit has been brought upon a written instrument setting up a purely legal demand and wherein the defendant has a complete and adequate remedy by way of defense available in the legal action a court of equity will not take jurisdiction of the cause and deprive the plaintiff of his right to a jury trial. [See 9 C. J. p. 1162, sec. 11, p. 1163, sec. 12.] Respondents seem to concede that such is the general rule but contend that there are special circumstances present such that they cannot obtain adequate and complete relief in the action at law and are therefore entitled to the affirmative equitable relief sought, citing Begley et al. v. Mississippi Valley Trust Co. et al. (Mo. *en banc*), 252 S. W. 84, and cases from other jurisdictions.

We consider the question first from the standpoint of the guarantors who alone were sued and at whose instance alone the cause was transferred from the law to the equity docket of the court. Their answer and cross-bill alleges in substance three grounds of non-liability, viz., (1) that they signed the guaranty after the lease had been executed and delivered and without consideration, wherefore they were never bound; (2) that the lessor by his acts and conduct elected to let the lease terminate and waived his right to elect to keep it in force, because of which it terminated according to its provisions; and (3) that the lessee surrendered the premises and the lessor accepted such surrender thus, also pursuant to the terms of the lease, terminating the contract. Those facts were provable as a defense by the guarantors to plaintiff's action at law without resort to the equity jurisdiction of the court and if established not only constituted a complete defense to that action but a judgment for said defendants would have been *res adjudicata* and a complete bar to any further action that could have been brought against them

by plaintiff or any assignee of or successor to his claim, the instrument sued on being non-negotiable and the suit being for the full amount of the guarantors' liability. Clearly defendants did not need the interposition of a court of equity in making their defense to plaintiff's cause of action.

The affirmative allegations upon which defendants seem to rely for affirmative equitable relief, to the effect that the leased premises "are liable" to be transferred and that said guarantors "are liable" to be subjected to further suits by plaintiff or a successor to his interest and that plaintiff is attempting to use the guaranty "unfairly and wrongfully" can hardly be said to amount to more than conclusions without the statement of any facts upon which to base them. No facts are given from which it appears that the guarantors are threatened with such future harassment if successful in their defense in the pending suit.

In Begley v. Mississippi Valley Trust Co., supra, cited by respondents, a different situation appeared. The note there in question was illegal in its inception and the holder, according to the petition, had shown by acts and conduct a disposition to use it to harass and annoy the makers. In summing up its conclusions and holding the makers entitled to the equitable relief sought, this court said:

". . . The intention of the holder of the note to institute and dismiss and reinstate suits thereon and harass the parties against whom the illegal note is asserted is not left to conjecture, but after suit thereon in Butler County, where the defendants resided, it appears plaintiff brought another suit thereon in the city of St. Louis, before dismissing the case in Butler County. And then, after defendants filed their answer and counterclaim in Butler County and the case was set for trial on the docket, ordered the clerk in vacation to dismiss the suit in Butler County. The note had ten years to run before it was barred by the Statute of Limitations, and the plaintiff could thus continue to bring and dismiss suits on said note at different times in Butler County or in the city of St. Louis, whenever defendant would visit that city during said ten years. Under such circumstances, the defendants' evidence of their defense which all rested in parol, through the death or absence or disability of witnesses, might be lost and defendants greatly inconvenienced and put to disadvantage in making out their defense in a suit at law on said note."

In the Begley case this court cited with apparent approval and quoted from Domingo v. Getman, 9 Cal. 102, Porter v. Jones, 6 Cold. (Tenn.) 313, 318, and Buxton v. Broadway, 45 Conn. 540, 541, also Story's Equitable Jurisdiction, section 700, which authorities indicate that a court of equity may take jurisdiction and cancel a

written instrument even where suit at law thereon has begun to which suit the maker has a complete defense, on the ground that the person sued cannot control the action and the plaintiff may at his pleasure dismiss it and later, perhaps when evidence to defeat it cannot so readily be produced, bring another, and so on; for which reason the remedy by defense in the legal action is said not to be as complete and adequate as that which equity may grant. Respondents cite cases of similar import from several other jurisdictions. Most if not all the cases cited deal with instruments which had been procured by fraud or which were negotiable or else there were special circumstances, as in the Begley case, which justified the interposition of a court of equity.

While in this case there is an attempt to plead a "fraudulent scheme" on the part of plaintiff to collect rent to which it is alleged he was not entitled if he intended to elect to continue the lease in force the facts pleaded do not amount to a showing of fraud. All plaintiff is alleged to have done was to demand the two months' rent which he claimed he was entitled to under the lease. Whether or not he was so entitled depends upon the construction of the lease. Respondents' real defense, aside from the plea that the guaranty had been signed after the execution and delivery of the lease (which the evidence did not support) was that the lease had terminated by virtue of its own provisions. If so cancellation was unnecessary. If, on the facts pleaded in this case, a defendant can convert a suit at law on a written instrument into one in equity it is difficult to imagine a situation in which the holder of any written instrument could not be deprived in like manner of the right to a jury trial in an action arising thereon. As said in Town of Venice v. Woodruff et al., 62 N. Y. 462, 467:

"There must exist some circumstances establishing the necessity of a resort to equity, to prevent injury which might be irreparable, and which equity alone is competent to avert. If the mere fact that a defence exists to a written instrument were sufficient to authorize an application to a court of equity to decree its surrender and cancellation, it is obvious that every controversy in which the claim of either party was evidenced by a writing could be drawn to the equity side of the court, and tried in the mode provided for the trial of equitable actions, instead of being disposed of in the ordinary manner by a jury."

We think the court did not intend in the Begley case to announce the doctrine that the fact that a plaintiff could and might dismiss his suit before submission and later bring another on the same cause of action would alone be sufficient to entitle the defendant to demand equitable relief and convert the action at law into one in

equity. The facts in that case did not require such holding and we do not think we should so hold.

In actions upon insurance policies containing an incontestable clause or in which such clause had become absolute by lapse of time we have held that the defense at law is adequate and that the insurer cannot convert the action into a suit in equity by asking cancellation of the contract. [Schuermann v. Union Central L. Ins. Co., 165 Mo. 641, 65 S. W. 723. And see Aetna L. Ins. Co. v. Daniel, 328 Mo. 876, 42 S. W. (2d) 584.]

In Berryman v. Maryland Motor Car Co., 199 Mo. App. 503, 204 S. W. 738, it is said that in order to convert a suit at law into one in equity the answer "must show a case entitling the defendant to affirmative relief necessary to sustaining or ascertaining his rights." A like expression is found in Withers v. K. C. Sub. Belt R. Co., 226 Mo. 373, 396, 126 S. W. 432. See, also, Rand, McNally & Co. v. Wickham, 60 Mo. App. 44, a suit for rent with answer asking cancellation of lease. Similar rulings have been made in suits on notes and checks which had ceased to be negotiable and could not come into the hands of an innocent purchaser. [Stalter v. Stalter, 151 Mo. App. 66, 131 S. W. 747; Thompson v. Nat. Bank of Com., 132 Mo. App. 225, 110 S. W. 681. See, also, Bank of Neelyville v. Lee et al., 193 Mo. App. 537, 182 S. W. 1016.]

Respondents cite Lincoln Trust Co. et al. v. Nathan et al., 175 Mo. 32, 74 S. W. 1007, in support of their contention that they are entitled to cancellation. That was a suit for an installment of rent in which the defendant by answer and cross-bill sought cancellation of the lease and it was held the action was converted into a suit in equity. The lease there in question provided that the lessor should repair or rebuild in the event of damage by fire but contained no provision for termination of the lease if the lessor failed so to do. It was held that the covenant of the lessor to repair or rebuild and the covenant of the lessee to pay rent were dependent and that it would be against good conscience to permit the lessor to violate the contract on his part and still require performance by the lessee. The court said:

"The cross-bill and the judgment rest upon the well-known rule of equity jurisprudence, that a court of equity will, in a proper case, declare a rescission of a contract for a violation of the covenants therein contained, because it would be against conscience to permit one party to violate the contract on his part and still hold the other party to a compliance with it. This is very different, however, from a forfeiture, such as is meant when it is said a court of equity does not favor forfeitures nor lend its aid to declare or enforce them.

"The pivotal legal question in this case is, whether the covenants to pay rent and to rebuild are dependent covenants, for if they are

542

and the plaintiffs did not comply with their covenant to rebuild, the defendants are not only entitled to be relieved from the payment of the two months' rent sued for herein but are entitled to be relieved from the whole obligation of the lease and to have the lease cancelled.''

We think the Lincoln Trust Company case is distinguishable from the instant case and does not support respondents' contention. See, also Haydon v. Railroad, 222 Mo. 126, 141, 121 S. W. 15, distinguishing Lincoln Trust Co. v. Nathan, supra. In our opinion the circuit court erred in holding that defendant guarantors' cross-bill converted the action into a suit in equity and in denying plaintiff a jury trial.

Respondents further contend that the question under consideration should be determined from the standpoint of defendant Brenner, and that even if the guarantors were not entitled on the showing made by them to affirmative equitable relief Brenner was so entitled because: (1) The suit against the guarantors was for only $6000, whereas plaintiff claimed Brenner owed him more than that and would probably have sued Brenner later for the balance claimed to be due, and (2) that the instant case might, under the pleadings, have been determined in favor of the guarantors upon their plea that they were never bound because having signed the guaranty after the execution of the lease, leaving undetermined the question of whether or not the lease had terminated. Regardless of whether or not Brenner's cross-petition presents better grounds for the exercise of equitable jurisdiction in his favor than does that of the guarantors in their favor we disallow this contention. Brenner came into the case after the court's ruling transferring the case to the equity docket had been made. It was not so transferred on his motion. He came in voluntarily and over plaintiff's objection. Also over plaintiff's objection he sought and was permitted to inject into the case a prayer for cancellation of the *lease*, a thing not only unnecessary to the guarantors' defense but which they did not ask and with which they had no concern. Although the guarantors might have asserted in their defense any fact tending to show that Brenner did not owe the rent and taxes sued for, since they were liable only as guarantors, Brenner doubtless had the right to come in as a party defendant to contest plaintiff's claim against the guarantors, he being the person ultimately and primarily liable. [Green v. Conrad, 114 Mo. 651, 21 S. W. 839; Bondurant v. Mills et al. (Mo. App.), 294 S. W. 742.] And of course he was entitled as such party to set up whatever would defeat plaintiff's demand against the guarantors. Cases supra. But we do not think he should be permitted in such circumstances to inject into the case an affirmative action in his own favor against the plaintiff not necessary to the defense against

plaintiff's suit and with which the defendants originally sued have no concern. Under the statute, Section 703, Revised Statutes 1929 (2 Ann. Stat., p. 915), the plaintiff had the right to sue such of the parties liable as he saw fit. And while, as above stated, Brenner had a right to come in and become a party for defensive purposes he should not be allowed to inject into the case an affirmative individual action of his own against the plaintiff changing the character of the suit and the mode of trial. Somewhat analogous in principle we held in Joyce v. Growney, 154 Mo. 253, 55 S. W. 466, that a defendant cannot either at law or in equity set up and inject into the plaintiff's case a cross-action against a codefendant not necessary or germane to his defense to the plaintiff's suit. To the same effect see Fulton v. Fisher, 239 Mo. 116, 130, 143 S. W. 438.

In Bert v. Rhodes et al. (Mo. App.), 258 S. W. 40, three co-owners leased land to Bert. Bert sued two of them for damages in the nature of trespass. The third was permitted to come in as party defendant and the three, over the plaintiff's objection, filed a counterclaim existing in their joint favor. This was held reversible error.

In Mathiason v. St. Louis et al., 156 Mo. 196, 56 S. W. 890, the plaintiff sued to enjoin the defendants from interfering with a drain pipe which he had laid from his premises to a certain sewer. By cross-bill the defendants pleaded that the plaintiff had so conducted his establishment which the pipe drained as to constitute said establishment a nuisance. The court held that the facts alleged in the cross-bill were not germane to the issues presented by the petition and quoted (l. c. 202) from 5 Encyclopedia of Pleading and Practice, 641, as follows:

"If a defendant, in filing a cross-bill, attempts . . . to introduce new and distinct matter, not essential to the proper determination of the matter put in litigation by the original bill, although he may show a perfect case against either the complainant or one or more of his co-defendants, his pleading will not be a cross-bill but an original bill. And no decree can be rendered on such matter."

We have not been furnished nor have we been able to find an adjudication directly in point on the precise question under consideration but we think the conclusion we have reached is in harmony with the spirit of our statutory provisions and conducive to orderly procedure.

Since the case may be retried it is proper for us to notice certain contentions which will necessarily be involved on another trial, chief of which is the construction of clause 6 of the lease above quoted. It provides that if the premises be destroyed or damaged by fire so as to be "wholly or partially untenantable," the lessor

544

may within sixty days elect to repair. If he does so elect he must repair within a reasonable time after such election and the lease remains in force. In that event the rent is to abate during the time the premises are "untenantable." If he does not so elect the lease terminates upon surrender of possession, the obligation of the tenant to pay rent continuing until such surrender.

Defendants' pleadings allege and the evidence showed that the premises were rendered partially untenantable by the fire. It is not disputed that the tenant continued to occupy and use the premises after the fire until he had completed the adjustment and settlement with the insurance companies carrying insurance on his goods. He needed the premises for that purpose and there was evidence that he objected to the lessor's agent coming in to make repairs until the insurance adjustment was completed. The lessor's notice of election to repair was served about the time the lessee completed the insurance settlement and within the time stipulated in the lease. It is conceded that the lessor demanded rent for the time the premises were so occupied by the lessee after the fire, threatening to enforce the demand by suit, and procured an order for the amount. The rent was not actually paid on that order until after notice of intention to repair had been given. While perhaps not very material to this point it may be stated here that the evidence shows the $290.34 paid March 9 when the premises were turned over, was not demanded by the lessor or his agent but was offered and paid voluntarily by the lessee.

Respondents contend that by the terms of the lease the rent abated during the period the premises were "partially untenantable" following the fire, even though lessee continued to occupy them for the purpose of adjusting his insurance; that the word "untenantable" used in the provision for abatement of rent means any condition rendering the premises unsuitable for a going mercantile business. It is upon that construction of the lease that their contention of waiver and estoppel is founded. Appellant contends that the use of the term "wholly or partially untenantable" in providing for the election to repair and alternative termination of the lease and the word "untenantable" in fixing the period during which rent should abate was by way of intentional distinction and that by the terms of the lease the rent did not abate while the premises were only partially untenantable and were occupied and used by the lessee, provided of course the lessor within the time allowed him elected to and did repair. In our opinion the latter is the correct construction. It is consonant with the language used and with the manifest purpose of the clause in question. The premises might be so damaged as to render them wholly untenantable, in which event it was reasonably provided that rent should abate forthwith, so that the lessor

could not create liability for two months' rent during which the premises could not be used by waiting until near the end of the sixty day period to make his selection. On the other hand, the damage might be so slight that the tenant could continue to use the premises while repairs were being made, calling for no abatement of rent. Or it might be such that the tenant could not reasonably be expected to occupy for the full term without repairs and yet such that he could profitably and would desire to use the premises for a limited time, as the evidence shows he did in this instance, without the interference of workmen engaged in making extensive repairs. We think the terms "partially untenantable" and "untenantable" in the provisions mentioned were designedly used and were intended to have different meanings. The facts in this case show the reasonableness of such construction. The lessor's agent, according to plaintiff's evidence, spoke to lessee about repairing immediately after the fire. The lessee objected because it would interfere with the business of appraising his stock and adjusting his loss with the insurance companies. That was his business immediately after the fire and until that business was completed he desired to and did occupy the premises for that purpose. And for that purpose they were tenantable, although they would have been untenantable for a going mercantile business. During such time the premises, though partially untenantable so as to put the lessor to his election to repair, because he had so agreed, were not in our opinion untenantable within the meaning of that term as used in the part of the lease providing for abatement of rent.

We have not overlooked the case of Acme Ground Rent Co. v. Werner (Wis.), 139 N. W. 314, cited by respondents, in which the majority opinion sustains respondents' contention as to the meaning of "untenantable." There was, however, in the lease there under consideration, no use of the term "partially untenantable," indicating an intention to distinguish between untenantability and partial untenantability. Three of the seven judges of the court dissented, taking substantially the view we have herein expressed.

In Beers v. Taussig et al., 96 N. Y. Supp. 738, a tenant who occupied premises for the purpose of adjusting his insurance after a fire which rendered the premises untenantable for a going business was held liable for rent notwithstanding a provision in the lease abating rent while the premises were untenantable. It was held they were tenantable for his then purpose.

The foregoing also disposes of respondents' contention that plaintiff waived his right to elect to repair by collecting the January and February rent. If plaintiff had the right to collect rent while the premises were partially untenantable but occupied by the lessee

for his own purposes and still to elect to repair within the time fixed by the lease there could have been no waiver.

It is contended that plaintiff is estopped to claim that the lease is still in force because the lessee in paying the January and February rent acted in the belief, induced by plaintiff's demand for such rent, that plaintiff intended to let the lease terminate. In view of what we have said above this contention also fails. Plaintiff made no representations to the lessee that he did not intend to repair. He only demanded the rent to which he was entitled. Moreover, the evidence shows that the lessee in fact acted upon the interpretation of the lease by his own counsel, viz., that the lessor by demanding the rent in effect elected not to repair and waived the right to elect thereafter to repair. There was merely a difference of opinion between lessor and lessee as to the legal effect of collecting that rent. There was no estoppel shown.

It is claimed by respondents in their brief that the lease terminated because the written notice of election to repair was qualified and conditional. We are not inclined so to regard the notice but shall not attempt to decide or discuss that question because in our opinion that issue was not presented by the pleadings. Defendants' answer and cross-bills set up the reasons why they denied liability and contained no suggestion that a sufficient notice of election to repair had not been given, and further, they contained references to the notice provided for in the lease which seem impliedly to concede that such notice had been given. Plaintiff had not in his petition pleaded the giving of that notice so the general denial in defendants' answer did not make such issue. Moreover, where a general denial is followed by a special plea of confession and avoidance setting up specifically the grounds on which the defendant denies liability the general denial is overcome by such special plea. [See Cowell v. Employers' Indemnity Corporation, 326 Mo. 1103, 34 S. W. (2d) 705, and cases cited.]

It is also contended that plaintiff accepted surrender of the premises thereby terminating the lease. Of course if the lessee surrendered the premises as a termination of the lease and the lessor accepted such surrender such surrender and acceptance terminated the lease. That was a disputed question upon which the evidence was conflicting. Plaintiff demanded possession "for the purpose of having said repairs and restorations made as provided in lease" and claims that the surrender of possession was made and accepted only for that purpose and upon that understanding. If so, such temporary surrender of possession did not terminate the lease. It is true. the lease by its terms only gave lessor the right to "enter said premises" for the purpose of making repairs. But if the required repairs were of such nature and extent that possession of the premises

for such purpose was deemed by the parties necessary or desirable we see no reason why the lessor with the consent of the lessee might not take temporary possession for such purpose without being guilty of breach or abandonment of the contract. Nor do we think such variation from the letter of the contract constituted an abandonment of the original contract or such change in performance thereof as to release the guarantors.

We deem it unnecessary to discuss other arguments advanced. For the reasons above indicated the judgment of the circuit court is reversed and the cause is remanded to be proceeded with in accordance with the views herein expressed.

PER CURIAM:—The foregoing opinion by COOLEY, C., in Division Two is adopted as the opinion of the Court en Banc. All concur.