## NATIONAL LEAD CO. v. NULSEN.
### No. 12303.

Circuit Court of Appeals, Eighth Circuit.
Oct. 29, 1942.

Rehearing Denied Nov. 23, 1942.

Writ of Certiorari Denied Feb. 1, 1943.

See 63 S.Ct. 533, 87 L.Ed. ——.

G. T. Priest, of St. Louis, Mo. (Boyle & Priest and Robert E. Moloney, all of St. Louis, Mo., on the brief), for appellant.

Richard S. Bull, of St. Louis, Mo. (Orla M. Hill, of Clayton, Mo., and Carter, Bull & Garstang, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiff in the district court from a judgment dismissing its petition and awarding recovery to the defendant upon his counterclaim for the sum of $21,182.48 with interest and costs. The defendant, A. G. Nulsen, having died pending the appeal, the executor of his estate has been substituted as appellee in this court.

Plaintiff's suit is to recover damages for an alleged breach of a written contract, the execution of which is admitted.

The contract upon which the suit is based was entered into on May 14, 1923, between the defendant, A. G. Nulsen, and J. K. Nulsen as parties of the first part, and the plaintiff, National Lead Company, as party of the second part. By the terms of the contract the first parties, in consideration of $800,000 to be paid as provided, agreed to sell and deliver to the plaintiff all the common capital stock (7,500 shares) of

National Pigments and Chemical Company, a Missouri corporation, hereinafter referred to as the Chemical Company. The purchase price of the stock was based upon an audit of the assets and liabilities of the Chemical Company as of December 31, 1922, made by Price, Waterhouse & Company, and attached to and made a part of the contract. Among other things, the contract provided that in the event the net assets of the corporation had increased from the ordinary conduct of business after December 31, 1922, and before the date of settlement, the sum of such net increase should be added to the purchase price, but, if the net assets decreased during that period, such decrease should be deducted from the purchase price. Such increase or decrease was to be determined by said audit and an audit to be made as of the date when the contract should be finally closed. A supplementary agreement fixed the time for final settlement on September 1, 1923. Delivery of the stock was acknowledged on October 10, 1923, and final payment of the purchase price was made on December 20, 1923.

Plaintiff's case is predicated upon the alleged breach of paragraph 7 of the contract, which reads as follows: "Parties of the First Part hereby guarantee that on December 31st, 1922, there were no liabilities of the National Pigments and Chemical Company not shown on the attached audit of Price, Waterhouse & Company, and that if any liabilities of said National Pigments and Chemical Company, other than those shown on said audit of Price, Waterhouse & Company, shall appear, then parties of the First Part hereby assume and agree to pay same; and this agreement is made for the benefit of the National Pigments and Chemical Company as well as the party of the Second Part hereto, and may be enforced by both the National Pigments and Chemical Company and the National Lead Company."

The alleged violation of the contract is in substance that on May 14, 1923, the date of the contract, there did exist a liability of the National Pigments and Chemical Company not shown on the audit attached to the contract, and that the defendant, A. G. Nulsen, had refused to pay the same.

The facts giving rise to the existence of the liability in question are undisputed. In 1920 Casper DeLore owned and controlled the J. C. Finck Mineral Milling Company and the DeLore Baryta Company, and

Nulsen and his son owned all of the capital stock of the Nulsen Corporation. In that year the three corporations were consolidated and became the Chemical Company. On August 3, 1921, Nulsen entered into a contract with DeLore as of July 30, 1921, by the terms of which he purchased for $400,000 all of DeLore's interest in the three corporations, the consolidation of which had not been completed. The last installment of the purchase price was payable January 10, 1925. When that contract was made a possible tax liability of the two DeLore corporations existed on account of back income and excess profits taxes in the amount of $35,000. In reference to these possible tax liabilities the contract provided: "(7) * * * It is mutually agreed between the parties hereto that in the event said liability shall hereafter be established at a greater sum than $35,000.00 and the same shall be paid by Nulsen or his associates or the National Pigments & Chemical Company, then the said DeLore shall, upon demand, pay to said Nulsen one-half of such excess over and above said sum of $35,000.00; and in the event such tax liabilities shall be determined to be less than said sum of $35,-000.00 then the said A. G. Nulsen will, upon the establishment of such fact, pay to the said DeLore one-half of the difference between the amount so determined for tax liability and the said sum of $35,000.00. This matter is to be determined not later than the date of maturity of the last installment payment hereinbefore provided."

After the execution of the last mentioned contract, Nulsen controlled the stock interests of the Chemical Company. He claimed that he negotiated the contract as its agent and on its behalf.

In December, 1926, DeLore, claiming that no liability for back income and excess profits taxes against either the J. C. Finck Mineral Milling Company or the DeLore Baryta Company had been established or paid, sued defendant Nulsen in the state court for $17,500, predicating his claim upon the above quoted paragraph of the contract of July 30, 1921. After DeLore first threatened suit, and during the pendency thereof, Nulsen took two different positions on the question of the liability arising out of the tax provisions of the DeLore contract. During the period from 1925 to 1927, he and his attorneys served three notices on the plaintiff demanding that it defend DeLore's suit. The demand was

based on the ground that the liability was a liability of the Chemical Company shown on the audit attached to the contract of May 14, 1923. In 1928 Nulsen changed his position and served notice upon the Chemical Company demanding that it defend DeLore's suit at its own expense. This notice was based on the ground that the contract was entered into by Nulsen as agent of the Chemical Company. Both plaintiff and the Chemical Company refused to defend and denied liability. The case was tried. DeLore obtained judgment therein against Nulsen for $14,907.56, and Nulsen paid the same on April 11, 1931.

Thereafter Nulsen elected to sue the Chemical Company, not the Lead Company, to recover the amount paid by him to satisfy the DeLore judgment. The suit was predicated on the ground that in negotiating the contract of July 30, 1921, with DeLore, on the basis of which DeLore had obtained judgment against him, Nulsen was acting for and in behalf and for the benefit of the Chemical Company and that the Chemical Company had adopted the contract. The case was begun August 19, 1931, and tried to the court without a jury April 25, 1937, resulting in a judgment on January 5, 1938, in favor of Nulsen and against the Chemical Company for $21,182.48, including interest to that date. The judgment was finally affirmed by the Supreme Court of Missouri on December 11, 1940. Nulsen v. National Pigments & Chemical Company, 346 Mo. 1246, 145 S.W.2d 410.

The judgment in favor of Nulsen has not been paid. At the commencement of the present suit Nulsen was a nonresident of the state of Missouri, and the plaintiff obtained jurisdiction by attaching the Chemical Company. After Nulsen appeared he filed an answer and counterclaimed for the amount of his judgment against the Chemical Company.

The defendant Nulsen contends: 1. That the contingent liability of the Chemical Company resulting from the contract of July 30, 1921, and established by Nulsen's judgment of January 5, 1938, (a) though not expressly, was sufficiently shown on the audit attached to the contract of May 14, 1923, by references; or, (b) if such references were doubtful or ambiguous, such liability was shown on the supplemental audit of October 18, 1923, a copy of which was furnished plaintiff prior to the final payment to Nulsen on December 20, 1923, of the purchase price of the Chemical Com-

pany stock. And 2. That plaintiff is bound and estopped upon the principle of res judicata by the judgment obtained by Nulsen against the Chemical Company in the suit in the state court, supra.

■ The defense that the liability of the Chemical Company for the obligation arising out of the contract of July 30, 1921, between Nulsen and DeLore, was sufficiently shown by references on the audit of Price, Waterhouse & Company attached to the contract of May 14, 1923, is without merit. That audit contained a balance sheet on which were listed the "Assets" and "Liabilities" of the Chemical Company as of December 31, 1922. Among the liabilities listed was "Reserves: For federal income taxes of prior years of constituent companies......$27,057.92." It was further stated: "The returns of the J. C. Finck Mineral Milling Company for the years 1917 forward are subject to final determination by the Department; however the reserve for possible future assessment in this respect would appear to be amply provided for."

Referring to the Nulsen-DeLore contract of July 30, 1921, the audit states: "The Balance Sheet of December 31, 1922, shows a sum of $180,000 still outstanding. * * * It should be observed here that Albert G. Nulsen in these negotiations acted as agent of the National Pigments and Chemical Company."

The foregoing are the references in the audit claimed by Nulsen to be sufficient to disclose to the Lead Company the liability of the Chemical Company to DeLore. No reference is made to the provision of the contract of July 30, 1921, set out above, wherein Nulsen agreed that in the event the tax liability of the DeLore corporations should be determined to be less than the sum of $35,000, then Nulsen would pay to DeLore one-half of the difference between the two amounts. Nulsen admits that these references do not expressly refer to this contingent liability, but claims that they are sufficient to put the plaintiff upon inquiry; and that had plaintiff investigated the transactions such liability could have been discovered.

This contention fails because the statements in the audit refer only to tax liabilities and not to a contingent contract liability, which was neither mentioned nor referred to. Further, the audit stated that "all liabilities of the [Chemical] Company at December 31, 1922, have been included.

in the attached balance sheet"; and such liabilities were specified as follows:

"The balance due at December 31, 1922, on purchase money obligations, arising from the acquisition of the Finck and De-Lore Companies, is made up as follows:

Payable to
Casper P. DeLore—

| | | |
|---|---|---|
| Due January 10, 1923 | $50,000.00 | |
| January 10, 1924 | 50,000.00 | |
| January 10, 1925 | 50,000.00 | $150,000.00 |

Albert G. Nulsen—

| | | |
|---|---|---|
| Due January 10, 1923 | $10,000.00 | |
| January 10, 1924 | 10,000.00 | |
| January 10, 1925 | 10,000.00 | $ 30,000.00 |
| Total | | $180,000.00" |

This statement purported to disclose all the liabilities of the Chemical Company to De-Lore. It cannot reasonably be said, therefore, that the references relied upon, supra, were sufficient to put plaintiff on inquiry with reference to a contingent liability to DeLore not disclosed on the itemized statement.

The contention that the liability in dispute was shown on the supplemental audit of October 18, 1923, and that such showing is binding and deprives plaintiff of the benefit of Nulsen's covenant to pay all liabilities of the Chemical Company not shown on the audit attached to the contract of May 14, 1923, is not pleaded as an estoppel, but it is urged that the references in the supplemental audit "put the Lead Company on notice as to the nature and possible extent of DeLore's claim" prior to final settlement and that the Lead Company should have done something about it before making final payment to Nulsen. The undisputed facts relied upon to support this contention are that while the accountants were preparing the supplemental audit, an attorney for the Lead Company (since deceased) directed their attention by letter to the unadjusted tax liability of the J. C. Finck Mineral Milling Company and the reserve for federal taxes for "constituent companies" of $27,057.92 set up on the audit attached to the contract and asked for a complete report thereon. Apparently in response to this request the supplemental audit of October 18, 1923, reporting the condition of the Chemical Company as of August 31, 1923, stated:

"The returns of the J. C. Finck Mineral Milling Company are subject to final determination by the Bureau of Internal Revenue, and while no larger assessment than the amount set up is anticipated, it should be borne in mind that one-half of any excess or insufficiency in this sum is payable to or by Mr. C. P. DeLore, as the case may be. This is in accordance with one of the provisions of the agreement, dated July 30, 1921, whereby your company acquired the Finck and DeLore properties.

\*     \*     \*     \*     \*

"So far as we could determine all ascertained liabilities of the company at August 31, 1923, have been given effect to in the attached balance sheet."

This was the first time the attention of the plaintiff Lead Company or its attorney was called to the particular provision of the contract of July 30, 1921, giving rise to the liability which is the origin of the dispute between plaintiff and defendant.

█ Upon the basis of these facts it is argued that the parties in making settlement treated the DeLore contingent claim as a liability shown upon the audit attached to the contract of May 14, 1923; and that having so construed the contract plaintiff is bound thereby. The trial court concluded that these facts sufficiently disclosed to the Lead Company this contingent liability of the Chemical Company prior to the final settlement to put the Lead Company on notice "as to the nature and possible extent of DeLore's claim and hence the indemnity agreement does not authorize a recovery by the Lead Company from Nulsen of the amount of DeLore's claim upon the theory that the existence of the DeLore claim against the Pigments [Chemical] Company was not disclosed by the audit."

The difficulty with the argument and the conclusion alike is that they do violence to the contract of May 14, 1923. The rights, duties, and obligations of the parties were fixed by that contract as of the date of its execution. Mitchell v. Cramp, 3 Cir., 8 F.2d 481, 482. All that remained to be done was performance of its terms. The preparation of the supplemental audit was but a step in such performance provided for in the contract, for the single purpose of determining the increase or decrease of the assets of the Chemical Company after December 31, 1922. The appearance on the latter audit of the contingent liability is squarely within the provision that "if any liabilities of said National Pigments and Chemical Company, other than those shown on said audit of Price, Waterhouse & Company, *shall appear,* then parties of the First Part hereby assume and agree to pay same."

(Italics supplied.) How plaintiff can be deprived of the protection of this covenant by final payment of the purchase price in strict conformity with the obligations of the contract is difficult to understand. Neither waiver nor estoppel is pleaded or relied upon. No ground upon which payment might have been withheld in 1923 is suggested, and none is apparent.

The intention of the parties as expressed in the contract sued upon is too clear and explicit to be thwarted by legal subtleties conceived after the very thing contemplated and provided for occurred. Against the event occurring in this case the Lead Company exacted a covenant in the contract from Nulsen for its protection; and it cannot be held to be at fault for not refusing payment when due and taking the risk of cancellation of the contract or a suit for its breach. See St. Louis Union Trust Co. v. Van Raalte, 214 Mo. App. 172, 259 S.W. 1067, 1072, f.; 17 C.J.S., Contracts, § 454, p. 935. Especially is this true since the contingent liability existing in 1923 could not be determined prior to January 10, 1925.

Nulsen's second contention is that plaintiff's cause of action in the present case "is barred by the doctrine of res judicata and estoppel by" the prior judgment in favor of Nulsen in the case of Nulsen v. National Pigments & Chemical Company, supra.

■■ The issue of estoppel by judgment must be determined by the law of Missouri. It is settled that in a federal court the judgment of a state court will be accorded the same but no greater effect as res judicata than would be given to it by the courts of the state in which it was rendered. Dickinson v. Orr, 8 Cir., 94 F.2d 536, 538; Nev-Cal Electric Securities Co. v. Imperial Irr. Dist., 9 Cir., 85 F.2d 886, 898; Wright v. Georgia R. & Banking Co., 216 U.S. 420, 429, 30 S.Ct. 242, 54 L.Ed. 544; City of Covington v. First Nat. Bank, 198 U.S. 100, 109, 25 S.Ct. 562, 49 L.Ed. 963; Union & Planters' Bank v. Memphis, 189 U.S. 71, 75, 23 S.Ct. 604, 47 L.Ed. 712.

■ Under Missouri law, as in the federal courts, the essential conditions of the plea of res judicata are the identity of the parties and of the subject-matter in the former and the subsequent actions. If the parties or their privies are the same, even though the demands are different, every right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction in the first suit will be conclusive in the subsequent action. Southern Pac. R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355; United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262; Tait v. Western Md. Ry. Co., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405; George H. Lee Co. v. Federal Trade Commission, 8 Cir., 113 F.2d 583, 584. But where the demands are different, even though the parties are the same, a former judgment is not conclusive in a subsequent action of any fact not distinctly put in issue, litigated, and directly determined in the former action. The estoppel in such a case cannot "extend beyond the point actually litigated and determined." Cromwell v. County of Sac, 94 U.S. 351, 354, 24 L.Ed. 195; Merchants' Heat & Light Co. v. Clow & Sons, 204 U.S. 286, 290, 27 S.Ct. 285, 51 L.Ed. 488; Virginia-Carolina Chemical Co. v. Kirven, 215 U.S. 252, 258, 30 S.Ct. 78, 54 L.Ed. 179; Glines v. Henwood, 8 Cir., 103 F.2d 226, 228; Scheer v. Trust Co. of St. Louis, 330 Mo. 149, 49 S.W.2d 135, 143; Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S.W. 629; Womach v. City of St. Joseph, 201 Mo. 467, 100 S.W. 443, 10 L.R.A.,N.S., 140. Parties, who having a right to do so control the litigation, are regarded as parties of record.

■ Privity, as used in the doctrine of res judicata, means mutual or successive relationship to the same rights of property; as testator and executor, ancestor and heir, assignor and assignee, grantor and grantee, lessor and lessee. To make one a privy to an action he must have acquired his interest in the subject-matter of the action subsequent to the commencement of the suit. Womach v. City of St. Joseph, supra.

■ Finally, the plea of res judicata is an affirmative defense and the burden of proof rests upon the party asserting it. Daniel v. State Farm Mutual Ins. Co., 233 Mo.App. 1081, 130 S.W.2d 244, 248; Scheer v. Trust Co. of St. Louis, supra.

■ Nulsen concedes that plaintiff's cause of action or demand in the present case is not the same one sued on by Nulsen in the former case in the state court. Nulsen claims here that plaintiff is estopped by the former judgment, (1) because plaintiff was privy to that judgment, (2) because plaintiff participated in and controlled the defense in the first suit, and (3) because the Chemical Company, so controlled by the

plaintiff, could and should have pleaded plaintiff's demand in the present case as a defense in the former.

The claim of privity is without any support in the circumstances in evidence. Plaintiff did not acquire its right of action by succession from the Chemical Company subsequent to the commencement of this suit. It acquired its right from Nulsen directly in the contract of May 14, 1923, by the terms of which it acquired the stock and right of control over the Chemical Company. Privity in a legal sense, in so far as plaintiff's cause of action in this case is involved, never existed between plaintiff and the Chemical Company.

We may assume that as owner of all the stock of the Chemical Company at the time of the trial of the case in the state court, plaintiff controlled the defense in that case; but in connection with the argument upon this point Nulsen claims that the corporate entity of the Chemical Company should be disregarded and that the plaintiff here should be looked upon as the actual and only defendant in the former suit. This claim is untenable. Throughout this litigation the parties have proceeded upon the theory that the Chemical Company is a separate corporate entity, Nulsen by electing to sue it as such in the state court without joining the Lead Company as a defendant, and the plaintiff by attaching it in this case.

Further it is the law that "In legal conception a corporation has an entity separate and distinct from its stockholders * * *. Nor is its obligation that of its stockholder. * * * The courts * * * will ignore the fiction of corporate entity [only] where it is used as a blind or instrumentality to defeat public convenience, justify wrong, or perpetrate a fraud * * *." Majestic. Co. v. Orpheum Circuit, 8 Cir., 21 F.2d 720, 724. The evidence here does not tend to show that the corporate structure of the Chemical Company was being used to perpetrate a fraud nor that its corporate entity "should be disregarded in order that justice may be done."

Nulsen most earnestly contends that the Chemical Company could and should have pleaded paragraph 7 of the contract of May 14, 1923, upon which plaintiff's cause of action is predicated in this case, as a defense to Nulsen's suit against the Chemical Company in the state court. This contention is based upon the fact that the liability of the Chemical Company for the amount of the DeLore judgment against Nulsen was a factor in both cases; that paragraph 7 of the contract sued upon was made expressly for the benefit of the Chemical Company; and that plaintiff controlled the defense in that case. These facts are not sufficient to bring the case within the principle that a judgment is conclusive in a subsequent action between the same parties on the same cause of action of all matters which might have been litigated therein, nor that a party to a controversy may not split his cause of action or defense. The facts here are governed by the rule in effect both in the Missouri and in the federal courts, that "where the causes of action are different, even where the parties are the same, it [the former judgment] is only conclusive of matters which were in fact litigated" in the former action. The former judgment "is not conclusive of any fact not necessary to be proved in the former case." Scheer v. Trust Co. of St. Louis, supra [330 Mo. 149, 49 S.W.2d 143]; Bennett v. Brotherhood of Locomotive Firemen and Enginemen, 232 Mo.App. 334, 106 S.W.2d 25, 27; Missouri, K. & T. Ry. Co. v. American Surety Co., 291 Mo. 92, 236 S.W. 657, 663; and cases cited, supra.

This principle is applicable in the present case. Assuming for the purpose of applying the rule that the parties were the same in both cases, that is, as the trial court concluded, that the action in the state court by Nulsen against the Chemical Company was in law and in fact an action between Nulsen and the plaintiff Lead Company, still the judgment in the former case is not res judicata in the present case. The issues were concededly different in the two cases; and plaintiff's cause of action in the present case based upon paragraph 7 of the contract of May 14, 1923, was not a fact "necessary to be proved in the former case." It was not pleaded in that case, but the contract was included in an agreed statement of facts filed in the appeal to the Supreme Court. In its opinion the court said [346 Mo. 1246, 145 S.W.2d 413], "In our opinion it is unnecessary for us to determine * * * whether plaintiff [Nulsen], under the terms of his contract of May 14, 1923, with the National Lead Company, assumed and agreed to pay such liability." The court pointed out that in the former case Nulsen's cause of action against the Chemical Company was "based upon a breach of duty which the law imposes upon the part of a principal to his agent to indemnify the agent against loss and damage directly

58

resulting from the good faith execution of the agency." The plaintiff's cause of action in the present case for breach of the contract of May 14, 1923, was neither pertinent nor directly defensive to the claim made by Nulsen in the former case.

The cause of action in the present case, if pleaded and proved by the Chemical Company in the case in the state court, would not have negatived agency. The plea would have been an affirmative defense in the nature of a counterclaim or of a plea in confession and avoidance. The assumption clause in the contract of May 14, 1923, carried with it its own right of action for a breach. The causes of action and the defenses being different in the two cases, and the plaintiff's cause of action in the present case not having been litigated in the former case, the judgment in the former case is not conclusive in the present case. Even if the facts had warranted pleading the assumption agreement in the case in the state court by way of recoupment, since it was not so pleaded the judgment is not conclusive in the present case. As said by Mr. Justice Holmes in Merchants' Heat & Light Co. v. Clow & Sons, supra [204 U.S. 286, 27 S.Ct. 286, 51 L.Ed. 488]: "* * * although there has been a difference of opinion as to whether a defendant, by pleading it [recoupment], is concluded by the judgment from bringing a subsequent suit for the residue of his claim, * * * the authorities agree that he is not concluded by the judgment if he does not plead his cross demand, and that whether he shall do so or not is left wholly to his choice."

The fact that the liability of the Chemical Company was a common factor in the two cases is wholly immaterial. Womach v. City of St. Joseph, supra.

Moreover, even though paragraph 7 of the contract of May 14, 1923, was made for the benefit of the Chemical Company as well as for the plaintiff, this paragraph could not under Missouri law have been pleaded as a defense, either as ground for avoidance or as a counterclaim, in connection with a general denial in the case in the state court. The evidence to support such a plea in avoidance or such counterclaim would have been wholly inconsistent with the denial of agency. The proof would necessarily have consisted of the contract and the audit attached thereto; and the audit, referring to the contract between Nulsen and DeLore of July 30, 1921, contained the statement: "Albert G. Nulsen in these negotiations acted as agent of the National Pigments and Chemical Company." In Carden v. Thompson, 333 Mo. 218, 62 S.W.2d 882, 889, the Supreme Court of Missouri said: "It is a rule of universal application that where distinct and separate defenses are included in the same answer and counterclaim they must be consistent with each other. The test is whether the proof of one defense necessarily disproves the other." This rule has been frequently followed by the Missouri courts, and we find no Missouri case inconsistent with it. See Babcock v. Rieger, 332 Mo. 528, 58 S.W.2d 722, 730; Cowell v. Employers' Indemnity Corporation, 326 Mo. 1103, 34 S.W.2d 705, 706; Finley v. Williams, 325 Mo. 688, 29 S.W.2d 103; Excelsior Steel Furnace Co. v. Smith, Mo.App., 17 S.W.2d 378, 380. The quoted statement in the audit would have disproved and overcome the denial, and, had the contract been pleaded, would have cast the burden of proof upon the defendant. Faced with these considerations upon the trial the Chemical Company was not required to plead the contract of May 14, 1923. Cromwell v. County of Sac, supra, 94 U.S. at page 356, 24 L.Ed. 195.

Our conclusion is that, under the undisputed evidentiary facts, the plaintiff was entitled to a judgment against the defendant as prayed for in its petition, and that the defendant was entitled to a judgment against the plaintiff upon his counterclaim. It follows that the judgment appealed from, in so far as it had the effect of dismissing the plaintiff's petition and denying the plaintiff a recovery, must be reversed and the case remanded with directions to enter judgment in favor of the plaintiff in conformity with this opinion, and for such further proceedings as may be necessary to offset the judgment for the plaintiff against the judgment for the defendant and finally to terminate this litigation. It is so ordered.