### WESTERN UNION TELEGRAPH CO. v. DUBELL et al.

No. 5170.

Circuit Court of Appeals, Third Circuit.

Feb. 23, 1934.

Albert E. Burling and Bleakly, Stockwell & Burling, all of Camden, N. J., and Francis R. Stark, of New York City, for appellant.

Albert S. Woodruff, of Camden, N. J., for appellees.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

An injury was inflicted upon the infant plaintiff by the skidding of a bicycle operated by a messenger boy of the defendant telegraph company. At the trial the facts were not in dispute; the questions concerned their permissible inferences. The learned trial court, recognizing the issue was close, refused the defendant's motion for nonsuit and later its motion for a directed verdict and submitted the case upon the question whether, within the principle of respondeat superior, the servant messenger boy was at the time of the accident engaged in his master's work within the scope of his employment. Both plaintiffs, son and father, had verdicts. From the judgment that followed, the defendant has appealed, assigning three errors; the court's refusal of the two motions and its submission of the issue of the messenger's employment at the time of the accident on evidence which, it says, admits of but one inference, that of non-employment, which the court itself should have drawn and have applied by granting one or the other of its motions. McCarthy v. Ins. Co., 75 N. J. Law, 887, 69 A. 170; Potoker v. Klein, 105 N. J. Law, 183, 187, 143 A. 375; Western Union Tel. Co. v. Phelps (Va.) 169 S. E. 574; Green v. Western Union Tel. Co., 58 S.W.(2d) 772, distinguishing Western Union Tel. Co. v. Kirby (C. C. A.) 37 F.(2d) 480; Doran v. Thomsen, 76 N. J. Law, 754, 71 A. 296, 19 L. R. A. (N. S.) 335, 131 Am. St. Rep. 677.

Actionable negligence not now being denied, the sole question on this appeal arises out of the assignment last cited. The facts on which it is based are briefly these:

The Gloucester office of the defendant telegraph company was operated by a young woman as manager. Its one messenger was the offending boy in this case. The office hours were such that the office was closed between 12 M. and 1 P. M. indicating, as the defendant contended, that not only was the office closed but business was "absolutely shut down" for that period. Then, ordinarily, the young woman and boy were off duty, free to go to lunch or anywhere they chose.

At 12 M. on the day in question—precisely at noon as the evidence disclosed—the manager gave the boy a message for delivery at an address in Brooklawn, another municipality, two and one-half miles distant from the telegraph office, with instructions "to deliver it and then take an hour for lunch." The boy delivered the message, had the recipient sign a delivery slip, and, with the slip in his pocket to be returned, under his master's regulations, to the office for its files, started back to Gloucester. The direction of his return was towards both the office and his home. True, after reaching Gloucester, he turned into a street west of Broadway. That street was more nearly in the direction of his home than of the office which was east of Broadway. He explained, however, that he took this route in order to avoid traffic. When about three blocks from the office and about two and one-half blocks from his home the accident happened.

The defendant's position is that on delivering the message (miles away from the office) the boy was immediately and automatically off duty. It takes this stand not, we imagine, because the office was closed at 12 o'clock, for, certainly, after it had closed the boy was on duty when going to the place at which he delivered the message, but for the reason that the young woman manager had told him to deliver the message "and then take an hour for lunch." With this instruction in his mind—possibly emancipating him for a time from his master—and with the delivery slip in his pocket, which he was required to take back to the office—possibly holding him for a time in his master's service—the boy completed the return of the journey on which he had embarked in his master's business either in his master's time or in his own and, accordingly, within or outside the scope of his employment.

The errand on which the master had sent the boy required a movement out and a movement back, both within the field of his employment. The outward movement was confessedly within the scope of his employment. Was the return movement also within the scope of his employment? The learned trial judge did not know; nor do we. And evidently the boy himself did not know. When on the stand he was not helpful. In reference to the delivery slip he testified:

"Q. You had a receipt blank?

"A. Yes.

"Q. Did you have that with you when the accident happened?

"A. Yes.

"Q. What do you do with those?

"A. Return them into the office.

"Q. After you deliver each message?

"A. Yes."

In reference to the return trip he testified:

"Q. After you delivered the telegram, where did you go?

"A. Started for home.

"Q. For what purpose?

"A. For to go on my lunch hour."

Thus he left open, except by inference, the question of when, and where, his lunch hour began and his work hours ended, the answer to which is also an answer to the question whether at the time of the accident he was in his master's employ. So, finally, the answer to this central question depends on the facts. These, we think, are susceptible not of a single inference but of two inferences, one the opposite of the other; one supporting, the other defeating, the plaintiffs' case. Twelve men, on a singularly clear charge upon this precise issue, found the boy on duty on the return leg of the trip and held he was within the scope of his employment when the accident occurred. The defendant, through its counsel, says with equal conviction that he was not. None but a jury could decide the question. We regard the evidence, though meager, so conflicting in permissible inferences that the court could not adopt one or the other. Therefore it committed no error when it declined to do so on the defendant's motion for a directed verdict and when it submitted the issue to the jury.

The judgment is affirmed.