EDWARD WRIGHTSMAN, by Next Friend, Respondent, v. E. B. GLIDEWELL, Appellant.

Springfield Court of Appeals, March 11, 1922.

1. **MASTER AND SERVANT:** Evidence on Question Whether Automobile Transportation was Part of Employee's Compensation, Held for Jury. Where defendant, the owner of an automobile truck causing injury, employed his son and nephew in the same kind of work, and the evidence showed the two employees lived in the same neighborhood and that transportation by defendant to and from work was part of the compensation for the son's service, testimony by the son that such transportation was also part of the compen-

sation for the services of the nephew, the negligent driver, *held* sufficient to present a question for the jury as to whether transportation was part of the nephew's compensation, though the son's testimony showed he had no personal knowledge as to the agreement between defendant and the nephew.

2. **TRIAL:** Evidence Unobjected to Considered in Determining Question for Jury. Where evidence becomes inadmissible and no motion to strike is made, such evidence will be considered in determining sufficiency of evidence to go to the jury.

3. **MASTER AND SERVANT:** Scope of Employment Element of Liability for Injuries to Third Person. The test for determining whether a master is liable for injuries inflicted by his automobile when driven by his servant is whether the servant, at the time of the accident, was engaged in the furtherance of the master's business concerning which he was employed.

4. ———: ———: Evidence on Question Whether Negligent Automobile Truck Driver was on Way to Work, Held for Jury. Evidence that a servant, whose contract of employment entitled him to transportation to and from meals, was driving his master's automobile truck along the route, which he would take in returning from his meal to his work when he injured plaintiff, *held* sufficient to present a question for the jury as to whether the servant was then returning to work, notwithstanding the uncontradicted testimony of the servant and two other witnesses that the servant was then on his way to take a witness to his work and intended to return for the other witness before going to his own work; there being evidence that on other occasions the servant had transported the first witness along the same route and left him at the street nearest his place of employment while the servant proceeded to his own place of employment.

5. **EVIDENCE:** Uncontradicted Testimony of Three Witnesses Does not Establish Fact as a Matter of Law. The uncontradicted testimony of three witnesses for defendant to a fact as to which defendant had the burden of proof under the circumstances does not establish that fact as a matter of law, since the credibility of those witnesses and the weight of their evidence was a question for the jury.

6. **MUNICIPAL CORPORATIONS:** Instruction Held Fairly to Submit Issue Plaintiff's Injury Was Occasioned by Accident Without Negligence. In an action for injuries to a bicycle rider by an automobile, which turned a corner and struck the bicyclist as he was dismounting at the curb, where defendant claimed the accident was due to a defect in the steering apparatus of the automobile and not to negligence of the driver, an instruction that, if the car became

disabled and its disability was not due to the negligence of defendant's servant, and by reason thereof the servant was unable to control the car, defendant would not be liable, clearly and fairly submitted the theory of accident to the jury.

Appeal from Circuit Court of Greene County.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*Hamlin & Hamlin* for appellant.

(1) The evidence upon the part of the plaintiff in chief tended to establish the following facts: First, that the car belonged to the defendant or at least bore his name and business, and was in possession of one of his employees at the time it struck and injured the boy. Those facts made a prima-facie case for the plaintiff as the jury had a right to indulge in the presumption, because Ellis being in charge of the car was acting within the scope of his employment, but like all presumptions in a case, take flight upon the appearance of the evidence of the real facts. In this case the positive proof showed that Ellis was not on business for his master nor within the scope of his employment at the time the car injured the boy, therefore the defendant cannot be held liable. Guthrie v. Holmes, 272 Mo. 215. (2) "All the authorities are in accord in holding that in an action based on the negligent running of an automobile the owner of the car who was not present at the infliction of the injury cannot be held liable except it be shown that the person in charge not only was the agent or servant of the owner, but also was engaged at the time in the business of his service. Evans v. Automobile Co., 121 Mo. App. 266; Lotz v. Hanlon, 217 Pa. 339; Slater v. Thresher Co., 107 N. W. 133; Patterson v. Kates, 152 Fed. 481; Reynolds v. Buck, 103 N. W. 946; Clark v. Buckmobile Co., 94 N. Y. Supp. 771; Howe v. Leighton, 75 Atl. 102; Jones v. Hoge, 92 Pac. 433; Lewis v. Amorous, 59 S. E. 338.

*Patterson & Page* for respondent.

The instruction in the nature of a demurrer to the evidence offered by the defendant at the close of all the evidence was properly overruled. Calhoun v. Mining Co., 202 Mo. App. 546, 571; Burger v. Mortor Co., 120 Pac. 519, 520; Goff v. Dairy Co., 103 S. E. 58, 59; Reynolds v. Denholm, 100 N. E. 1006; Steffen v. McNaughton, 124 N. W. 1016, 1018.

BRADLEY, J.—Plaintiff, a boy thirteen years old, sued by next friend to recover for injuries received by being struck by a Ford truck owned by defendant and driven at the time by his agent. The cause was tried before the court and a jury, and resulted in a verdict and judgment for plaintiff in the sum of $1500 from which defendant appealed.

The charging part of plaintiff's petition is as follows: "That on the said 17th day of June, 1919, the plaintiff, Edward Wrightsman, was traveling northward upon and along the National Boulevard, between Chestnut and Center streets, and was riding a bicycle along said highway, which is one of the public thoroughfares of the said City of Springfield, and which is much used for travel by the public. That at the same time the defendant, his agent, servant and employee, was operating his automobile truck upon and along Center street, and was approaching the National Boulevard, on which plaintiff was traveling, from the east. That defendant, his agent, servant and employee, was operating and driving said automobile truck along said Center street at a dangerous, reckless and negligent rate of speed. That plaintiff at the same time was at the east curb of said National Boulevard at a point about twenty feet south of the intersection of Center street therewith, and was in the act of dismounting from his bicycle on which he had been riding. Plaintiff further states that while plaintiff was in the position as aforesaid, and while in the exercise of due and reasonable care for his own

safety and security, the defendant, his agent and employee, in charge and control of said automobile truck, recklessly, carelessly, negligently and unlawfully operated said automobile truck at a dangerous, reckless, negligent and careless rate of speed, and while so doing, attempted to turn said automobile truck south on said National Boulevard, and in so attempting to turn said automobile truck into and upon said National Boulevard, because of the reckless, negligent and careless and unlawful rate of speed at which the same was bing driven, defendant, his agent, servant and employee, in charge and control of said automobile truck, lost control of the same, and recklessly, negligently, carelessly and unlawfully caused the same to run upon and over plaintiff, thereby injuring him as herein set forth.'' The answer is a general denial.

Error is assigned upon the following grounds: (1) Because the court refused to direct a verdict for defendant; (2) because of the giving and refusing of certain instructions.

The first assignment is bottomed upon two propositions. First, that defendant's employee who was driving the truck at the time was not within the scope of his employment. Second, that plaintiff's injury was due to an accident for which no one was responsible. In view of the first assignment a somewhat detailed statement will be required.

Defendant conducted a tire business at 407 West Walnut street in the city of Springfield, and resided a little more than two miles distant from his place of business. The truck was owned by defendant and during the day it was kept at his place of business and used in connection therewith, and at night was kept at defendant's residence. Defendant's son, a young married man, and defendant's nephew, Tom Ellis, a young man, worked for defendant at his place of business, and Ellis roomed and boarded at defendant's home. Defendant paid Ellis $6 per week and his board. Defendant stated that Ellis' wage was $12 per week, but that he always deducted $6,

and turned that amount over to his wife for the board and lodging. Defendant's son Paul resided near defendant, and the truck was used of mornings to convey defendant, his son, and Ellis to place of business, and then at noon back home for dinner and return, and at night to return home in, and was generally driven by defendant's son. Defendant's home was a short distance beyond his son's home, measured from the place of business. Defendant frequently had lunch down town, but his son and Ellis usually went home.

On June 17, 1919, defendant's son and Ellis went home for dinner, Paul driving and defendant remained down town. Paul took dinner that day at his mother-in-law's who lived near by. When they reached the mother-in-law's place Paul got out. Ellis drove the truck on to defendant's home. On that day defendant's son-in-law, Kellogg, took dinner at defendant's. Kellogg worked at the United Iron Works four blocks south of defendant's home. After the noon meal Ellis and Kellogg got in the truck, Ellis driving, and drove west on Center street till the place was reached where Paul was. Ellis expected to pick up Paul and the three would ride in the truck west to the boulevard, and thence south to the street leading east to the United Iron Works, and there Kellogg would get out, and Paul and Ellis go on to their work. Paul, however, had not finished his dinner, and Ellis says that Kellogg then asked him to take him on to the United Iron Works. Ellis says that he then started to take Kellogg to the United Iron Works with the intention of returning for Paul, and that they then would go on to their work. It was then about 12:45 and Ellis and Paul were due back at work at 1 o'clock. Unless they turned around the route to the United Iron Works from the place they then were, was west on Center to the National Boulevard, thence south some four blocks, then east a block.

The evidence tends to show that Ellis was driving about twenty-five miles per hour as he approached the boulevard, and that in attempting to make the turn

south he lost control of the car, and instead of going south after the turn the car turned east and ran against the east curb, and south down the curb and partly on the parkway, and struck and ran over plaintiff who was then on a bicycle at or against the curb twenty or twenty-five feet south of Center street. Plaintiff had apprehended danger and was in the act of dismounting from the bicycle at the time he was run over. He was going north on his way to school from his noon lunch at home, and scenting danger he attempted to dismount and had his right foot on the parkway when he was struck. After the truck turned east and struck the east curb and ran south over plaintiff, it then bounded off into the roadway and ran west across the boulevard to the west curb, and bounded back some four or five feet where it came to a standstill.

It appears in evidence that Kellogg had on prior occasions ridden from defendant's home in this truck with defendant, Paul and Ellis over this same route to the boulevard thence south to the intersecting street leading east to the United Iron Works and would there get out, and the truck would go on to defendant's place of business. If Ellis was *on his way* to work when plaintiff was struck then he was within the scope of the contract of employment disclosed here, but if he was on a mission of his own not connected with his contract of employment then defendant is not liable. [Calhoon v. Mining Co., 202 Mo. App. 564, 209 S. W. 318, and cases there cited.] Defendant's son testified that: "Tom Ellis boarded with my father and was getting his board as part of his wages, he was getting the service of riding to and from his work as part of his pay and that was part of my pay." This witness on cross-examination stated that he did not hear the contract between Ellis and defendant. Ellis and defendant say that the matter of transportation to and from work was not a part of the agreement between defendant and Ellis. It was not shown on what defendant's son based his statement that defendant was to convey Ellis to and from work, and

no attempt appears to have been made along that line. No request was made to strike out this evidence, and in view of the fact that defendant did convey Ellis and Paul to and from their work, and that service was a part of Paul's contract, and that Paul and Ellis worked at the same place and in the same kind of work and lived in the same neighborhood, these facts and circumstances were some evidence that as a part of the contract of hire defendant was to furnish Ellis conveyance to and from his work. There is no evidence that defendant had by implication or otherwise authorized Ellis to take Kellogg back to work. It is true that Kellogg had occasionally ridden in the truck at the noon hour when on his way back to work, but there is nothing to show that such service on the part of defendant was any more than a mere favor to his son-in-law. After some research concerning the question here prescribed we stated in Calhoon v. Mining Co., supra, that the real test is whether the servant at the time of an injury was engaged in the furtherance of the master's business concerning which the servant was employed. In that case we said: "When defendant Nolan was going to his home for his supper he was then on a mission of his own business, a matter that proximately concerned Nolan, only. The contract of employment did not require the mining company to furnish Nolan transportation to and from his meals and it was a mere accomodation to Nolan to loan him the car to go to and from his meals while his own car was out of order. Had Nolan been in his own car at the time of the collision it could hardly be urged that the defendant mining company would be liable, yet there was no different relation created when Nolan's car broke down, and the mining company loaned him its car to use in going to his meals until his own car was repaired. To hold the mining company liable would be to punish for an act of generosity; and would tend to intimidate any employer from accomodating his servant if that accomodation consisted in loaning the servant an automobile."

The facts here however are different. In the Calhoon case the furnishing of transportation to and from meals was no part of the contract of employment, while here that was a part of the contract of employment, and when Ellis was engaged in transporting himself back to work he was engaged in an act in furtherance of his employer's *business* connected with the contract of employment. In Steffen v. McNaughton, 124 N. W. (Wis.) 1016, the facts are stated thus: "The facts are that under his contract of service with John McNaughton, the owner of the automobile and the defendant in this case, he was to care for and operate the machine at the request and direction of the defendant or any member of his family; that he was to devote his time to the performance of such services during the day, and was to perform the actual duties of a chauffeur; that the defendant did not undertake to furnish him his meals, and for midday meal he was allowed to go to his home, about one mile distant from the defendant's residence where the automobile was kept; that he usually walked to his home for this meal; that he had used the automobile, probably ten times, to make this trip without obtaining the permission or consent of the defendant or any member of his family so to do; that he so used the machine on the day in question; and that he passed in and out of the defendant's premises adjacent to the house on such occasions, and that the defendant was at his home on some of them. The defendant testifies that he at no time gave permission to or authorized the chauffeur to so use the automobile, and that he had no knowledge that it was being used by him for this purpose." Recovery was denied in that case. The court made the observation that it was obvious from the contract of employment that it did not embrace the use of the automobile by the chauffeur for going to his meals. It is our conclusion, assuming here that Ellis was on his way to work when he ran over plaintiff, that he was at the time within the scope of his contract of employment, because the contract provided that defendant was to furnish Ellis transportation to and from his meals.

The next question is: Was there any substantial evidence tending to show that Ellis was on his way to work? If Ellis of his own accord and without the consent of defendant was engaged in taking Kellogg to his place of work, then defendant is not liable. On this phase of the case the court gave this instruction: "You are instructed that if you believe and find from the evidence that the driver of the automobile, Tom Ellis, at the time it struck plaintiff, was engaged in taking the witness Kellogg to the Iron Works on a special trip with a view of returning for Paul Glidewell to take him to the defendant's shop, then the said Ellis was not at the time in the discharge of the duties of his employment and your verdict should be for the defendant." Does the evidence conclusively show that Ellis was on his way to take Kellogg to his place of work, with the view of returning for Paul? The trouble occurred at a place on the usual route Ellis would have gone on his way back to defendant's place of business. Occasionally Kellogg had ridden in this car with defendant, Paul and Ellis over this same route to the street leading from the boulevard to the United Iron Works, and would there get out and walk to his place of work and the car go on down town to defendant's place of business. This could have been the case the day of plaintiff's injury. Ellis in taking Kellogg to his place of work would have traveled over the same route to the intersecting street leading to the United Iron Works that he would have traveled over in going to his own place of work. He says, however, that he was intending to take Kellogg to his place of work and then go back for Paul. Kellogg and Paul testify to facts which corroborate Ellis in this respect. Also there are other facts which tend to corroborate in this respect. But the facts we have stated respecting the route over which Ellis was traveling was some evidence that he was on his way to work, and the question was one of fact for the jury There is no circumstance here such as being off the usual route to defendant's place of business or going away from the place of business. To sustain

defendant's contention with respect to the question here under consideration we would have to accept the word of Ellis, Paul and Kellogg as absolutely conclusive and ignore the facts and circumstances above mentioned tending to show the contrary. The case here on the facts is distinguishable from Gutherie v. Holmes, 272 Mo. 215, 198 S. W. 854. Here as there plaintiff made a prima-facie case by showing that he was injured by the negligent operation of defendant's car driven by his employee or servant. This prima-facie case however rests upon the presumption of fact that the servant was within the scope of his employment at the time. In Gutherie v. Holmes, supra, the chauffeur left the station in Kansas City at 1:30 p. m. under certain directions from the defendant which would have required not exceeding an hour to comply with and get home with the car. Instead of obeying instructions the chauffeur went, it seems, on a lark of his own, and happened to an accident at 7:30 o'clock. In that case the court held that the facts overcame the presumption. Such was the situation in the Calhoon case, supra.

Foster v. Metropolitan Life Ins. Co., 233 S. W. (Mo. App.) 499, was a suit on an insurance policy. The defense was non-payment of premium. There was no evidence that the premium had been paid except the delivery of the policy. The evidence on the part of defendant was to the effect that the premium had not been paid. It was held in effect that the presumption of payment by delivery of the policy made a prima-facie case for the jury, and could not be overcome as a matter of law by any evidence however much. The St. Louis Court of Appeals in that case followed the Supreme Court in Lafferty v. Kansas City Casualty Co., 229 S. W. 750. That case was certified to the Supreme Court by the St. Louis Court of Appeals (209 S. W. 942), because the Court of Appeals believed its opinion in conflict with Gilmore v. Modern Brotherhood, 186 Mo. App. 445, 171 S. W. 629. The Supreme Court in the Lafferty case adopted the opinion by the Court of Appeals which

contained this language: "Learned counsel for appellant argues with great force that it appears affirmatively that Lafferty did not pay anything on this policy by way of premium or otherwise and that the testimony of defendant shows affirmatively that the policy was never accepted nor delivered as a policy. That may be, but these were for the determination of the jury. [Erhart v. Dietrich, 118 Mo. 418, loc. cit. 426, 24 S. W. 188.] The possession of the policy raised the presumption that it had been delivered and paid for, or that credit had been given for the premium."

The Supreme Court in addition to adopting the opinion of the Court of Appeals specifically overruled the Gilmore Case and used this language: "The old familiar rule that the jury is the judge of the credibility of witnesses should not be overlooked, which must not be controlled or interfered with by the court. This is true whether the witnesses are introduced by the plaintiff in support of the allegations of the petition or by the defendant in support of the allegations of the answer. In other words, the rule mentioned absolutely bars the right of the court to instruct the jury to find for the plaintiff, even though hundreds of the most reputable witnesses of the community should testify to the facts stated in the petition; even though their testimony should be contradicted, the jury must still be the judge of the credibility of the witnesses and the weight to be given to their testimony, and the same would be true as to the testimony of as many other witnesses should they testify to the facts charged in the answer, for the jury alone must be the judge of their credibility and the weight to be given to their testimony, and in either case the court has absolutely no legal authority to interfere with that absolute prerogative of the jury. [Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505.]"

It will be observed by reference that the Judge of the Supreme Court who wrote the opinion in the Lafferty case vigorously dissented in Gutherie v. Holmes, supra.

The Judge who wrote the opinion in Gutherie v. Holmes wrote a separate concurring opinion in the Lafferty case in which this language appears: "I agree that the presumption of a delivery arose upon the showing that the policy was in possession of the deceased. This is purely a presumption as to the fact of delivery, and is a rebuttable presumption. Without adverse proof, the presumption made a prima-facie case for the jury for plaintiff, but here we have the presence of the facts destroying the presumption, if those facts are to be taken as proven. So that we get the old question in Gannon v. Gas Co., 145 Mo. loc. cit. 515, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505; Trust Co. v. Hill, 223 S. W. 434. The facts shown made a prima-facie case for the jury, and under Gannon v. Gas Co., supra (a case which I have always followed but at times with much reluctance), this prima-facie case left to the jury the determination of the credibility of the evidence offered by defendant. Under Gannon's Case and its predecessors and many successors (as late as Keller v. St. Louis Butchers' Supply Co., 229 S. W. 173, at this term of the court), the delivery of the policy sued upon was for the jury."

In Downs v. Horton, 230 S. W. (Mo.) 103, the question of the right of the trial court to direct a verdict was considered somewhat at length, and a conclusion reached we think somewhat at variance with some of the cases, supra. But in the case here there was some evidence to prop the presumption, and we hold that the question as to whether Ellis was on his way to work or on his way to take Kellogg to his place of work when plaintiff was injured was for the jury.

The second subdivision of the first assignment that plaintiff's injury was due to a pure accident is based on some evidence tending to show that a Ford sometimes has "spells" when the steering apparatus will "balk" from no apparent cause. On this phase the court gave this instruction: "If the car became disabled while making the turn from Center street in the boulevard, by reason of the clutch or steering gear becoming struck, and

said disabled condition was not caused by the negligence of the said Ellis, and by reason thereof the said Ellis was unable to control or guide said car, and on account thereof, said car struck the boy, then the defendant would not be liable, and your verdict should be in favor of the defendant." This instruction we think clearly and fairly submitted the *pure accident* theory, and the jury found against defendant on that theory, and thus settled that question.

In his assignments proper defendant makes complaint because of the giving of instruction B, and the refusal of instruction G. In the brief proper instruction 1 is challenged. There is no substantial merit to the assignment based on the instructions. We have examined the instructions, and when all are considered together we think the issues were fairly submitted. The judgment below should be affirmed, and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.