BERNICE CHILES, RESPONDENT, v. METROPOLITAN LIFE INSURANCE CO., A CORP., APPELLANT.—91 S. W. (2d) 164.

Kansas City Court of Appeals. January 27, 1936.

*I. Frank Rope* and *Frank E. Reinhardt* for respondent.

*Mosman, Rogers, Bell & Buzard* and *Lewis N. Wolfe* for appellant.

SHAIN, P. J.—In this action the respondent, hereinafter referred to as plaintiff, sues appellant, hereinafter referred to as defendant, for damages alleged to have been inflicted upon her in an automobile collision at the intersection of Troost Avenue and 13th Streets in Kansas City, Missouri.

The incident and the allegations of negligence are alleged in plaintiff's petition as follows:

"Plaintiff further states that on or about December 9, 1932, at or about 5:30 o'clock P. M., while she was driving her Ford automobile east on and over 13th Street and while attempting to cross the intersection of Troost Avenue, the defendant, The Metropolitan Life Insurance Company, by and through its agent, servant and employee, L. J. Filler, so carelessly, recklessly and unlawfully drove and operated or caused to be driven and operated a certain Willys sedan north upon said Troost Avenue at said intersection, as hereinafter more specifically set forth, so as to cause said Willys sedan automobile to come into violent contact and collision with the right rear portion of plaintiff's Ford automobile so as to cause said Ford automobile of the plaintiff to be crushed, broken and damaged and caused the plaintiff herein to sustain the severe, painful and permanent injuries hereinafter more specifically set forth."

The plaintiff in her petition specifically pled ordinances of Kansas City, Missouri, in addition to the general law controlling traffic on

streets and highways and street intersections. The ordinances pled required vehicles to be driven with care and provides penalty for careless, heedless, willful and wanton driving in disregard to the rights and safety of others.

As to intersections, after reaching within fifty feet, the ordinance provides as follows:

"(a) VEHICLES APPROACHING AN INTERSECTION. The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. When two vehicles enter an intersection at the same time the driver of the vehicle on the left shall yield to the driver on the right."

After setting forth of above allegations and ordinances, the plaintiff's petition states that:

"The defendant carelessly and negligently and unlawfully failed and neglected to do, and drove and operated said automobile in a careless, negligent and reckless manner and at a rate of speed of 45 miles per hour, and carelessly and negligently and in violation of law approached and crossed said intersection at said time at said unlawful rate of speed and carelessly and negligently and in violation of the law failed to yield to plaintiff the right of way and the right to proceed across said intersection although said defendant saw that plaintiff had entered and was almost across said intersection before said defendant had entered same and drove and operated the said automobile upon said street in willful disregard of the rights and safety of the plaintiff and without due caution and circumspection and as a result of said careless and negligent acts and each of them on the part of the defendant, and as a result of the violation of said city ordinance and the laws of the State of Missouri by said defendants, said automobile of the defendants was caused to come into violent contact with and run into and against the automobile of the plaintiff and the plaintiff herein with great force and violence, causing plaintiff to be thrown about and against the machinery and appliances of said automobile and causing her to sustain the severe and painful injuries and damages to her said automobile as hereinafter more specifically set forth."

Plaintiff alleges her injuries as deep cut on scalp and on face over left eye, injury to her back and right arm, muscles, nerves, cords, and tendons and alleges bruises and concussion of brain and lays damages at $7500.

Defendant's answer was a general denial. Trial was by jury and resulted in a verdict for the plaintiff in the sum of $1000. Judgment was entered in accordance with the verdict and defendant has appealed.

The defendant makes two assignments of error as follows:

"1. The trial court erred in overruling the peremptory instruction in the nature of a demurrer offered by the defendant, Metropolitan Life Insurance Company, at the close of plaintiff's case.

"2. The trial court erred in permitting the plaintiff to testify to conversations which she claimed she had with defendant Filler after the collision in question and over the objections of the defendant, Metropolitan Life Insurance Company. [Rec., pp. 32, 33.]"

## OPINION.

It appears that L. J. Filler was a co-defendant herein and that judgment was also had as against said Filler. However, Filler has not appealed.

The plaintiff in this case, by her testimony, presented an issue of fact as to allegations of negligence of defendant Filler. However, as to the defendant, appellant herein, the question as to whether or not the negligent acts of said Filler can be attributed to the appealing defendant is material to the issue before us.

As all competent evidence that is most favorable to the plaintiff must be considered and given effect in determining the issue presented by defendant's first specification, we proceed first to a determination of defendant's second point.

The testimony objected to was a conversation had between the plaintiff and the co-defendant Filler that is purported to have occurred shortly after the accident and at or near the scene of the accident.

The plaintiff was the first witness called and, upon being asked to detail the happenings at the time and immediately after the accident, objection was made to any conversation between defendant Filler and plaintiff. The objection was stated as follows:

"MR. MOSMAN: I object to that, if the court please, as neither competent, relevant nor material and not binding on the defendant, Metropolitan Life Insurance Company; no showing he was empowered to make any statements or admissions for the defendant."

The above objection was sustained by the court. Thereafter, Harry Wood, branch manager of the appealing defendant, was called as a witness for plaintiff. In the examination of Mr. Wood the following questions and answers appear:

"Q. Was Louis J. Filler employed by your company? A. Yes, sir.

"Q. Was he in your employ on December 9, 1932? A. To the best of my knowledge, yes.

"Q. And you were his manager at that time? A. Yes.

"Q. And what were his duties? A. Agent, collector, solicitor for life insurance.

"Q. How long had he been with the Metropolitan? A. I don't know exactly how long he had been with the Metropolitan. He had been with me about a year.

"Q. In connection with his soliciting or selling or collecting where did his—where was his territory? A. The northeast section of the city.

"Q. Who assigned that territory to him? A. I assigned that territory to him.

"Q. You assigned that territory to him? A. Yes, sir.

"Q. (By Mr. Rope): In addition to that particular testimony he could go any place in the city? A. He could write life insurance in any part of the city.

"Q. Was he on a salary for your company? A. Salary and commission.

"Q. What salary did he receive? A. He was receiving about $40 a week about that time you mentioned.

"Q. Is he still in your employ? A. No sir."

In regard to a car used by defendant Filler, the following questions and answers occur:

"Q. (By Mr. Rope): Did you know he was using a car in his collections? A. *I knew he was using a car pertaining to the business.* (Italics ours.)

"Mr. Rope: Yes. I think that is all."

"Q. Now when he would start out in the morning what would he do? Did he have to go to the territory every day of the week? A. The first three days he was compelled to go there and most other days, too.

"Q. Mr. Wood, you had no objection to his using the car in his business, had you? A. I had no objection."

After Mr. Wood had testified the plaintiff was recalled as a witness and the following proceeding is shown:

"Q. Mrs. Chiles, at the time of this collision when you got out of your automobile did you have any conversation with the defendant Filler? A. I certainly did.

"Q. Just tell the jury what took place and what that conversation was.

"Mr. Mosman: I object to that, if your Honor please, as neither competent, relevant nor material and not binding on the defendant, Metropolitan Life Insurance Company. It can only go to the theory he can establish agency by the statements of an agent.

"The Court: Objection sustained. You had better make your offer of proof so I will know what you are driving at."

Thereafter, the plaintiff made an offer and after consideration the court ruled that plaintiff could testify as to the conversation and the following as shown by the record:

"The COURT: The question is what did he say to you? What did he say to you? A. Well, I asked him what his name and address was, after I had given him my identification card and he refused to give it; started to walk away. I kept talking to him. He turned around and came back. He said he just didn't have time to give me his name and address; he had several collections to make before he started home and that I could get it off of his license number. And that conversation took place three or four times until some man said to him—

"Q. (By MR. ROPE—interrupting): Just a minute.

"THE COURT: No.

"MR. MOSMAN: I move to strike that out as no part of the *res gestae*; a conversation that took place after an argument and not spontaneous and not part of the *res gestae*.

"THE COURT: Overruled. It is admitted as a part of the *res gestae*. Overruled.

"To which action, order and ruling of the court, the defendant at the time duly excepted and still excepts."

The record shows that the issue was presented as to the two defendants and it is shown that the jury verdict was against defendant Filler as well as against the defendant who has appealed.

Any conversation bearing upon the accident was admissible as to the defendant Filler, regardless of question of *res gestae*. Testimony, if admissible for any purpose or any reason, must be admitted. It then becomes the duty of the complaining party to ask the court to instruct the jury not to consider the evidence in the determination of questions wherein said testimony is not admissible. This course was not followed.

We, however, conclude that the conversation detailed in evidence was not prejudicial error for the reason that Filler's agency was proved by witness Wood and once proven the narration by plaintiff of that part of the conversation, referring to collections to be made, coming as a part of the whole conversation cannot be concluded as presenting prejudicial error. The declarations of defendant Filler, while insufficient to prove agency, still said agency being otherwise deducible from the evidence, other facts and circumstances tending to support the agency may properly be considered. [John P. Mills Organization v. Bell, 37 S. W. (2d) 680.]

The defendant presents a long line of authority to the effect that agency cannot be proved by declarations of the agent. However, as we have concluded that proof of general agency has been amply shown by other evidence, the authorities cited on that particular phase are not in point and, in view of Mills Organization v. Bell, supra, and in view of the law declared in Barz v. Fleischmann Yeast Company, 308 Mo. 288, 271 S. W. 361, and other decisions along the same line, we conclude there was not error in admitting the testimony complained of.

Having concluded as above, the question arises as to whether or not there is evidence from which it can be inferred that defendant Filler, at the time of the accident, was so engaged in the business of the appealing defendant as to make it responsible for his acts.

The defendant cites Greene v. Western Union Tel. Co., 58 S. W. (2d) 722, wherein it is held that the mere fact that one is in the general employ of another does not make the employer liable for his acts of negligence.

The above case follows the general rule that has been followed in this State. In Farber v. Mo. Pac. Ry. Co., 32 Mo. App., the court held:

"The mere fact that a tortious act is committed by a servant while he is actually engaged in the performance of the service cannot make the master liable. Something more is required. It must not only be done while employed, but it must pertain to the duties of the employment. That has been repeatedly decided in this State. [McKeon v. Railroad, 42 Mo. 83; Snyder v. Railroad, 60 Mo. 419; Jackson v. Railroad, 87 Mo. 430.]"

The Farber case, supra, was affirmed by the Supreme Court and the rule as stated therein is the law in this State. [See, 116 Mo. 81, 22 S. W. 631, 634.]

We are confronted in this case with a problem that has been the subject of much judicial comment. We allude the fact that while defendant Filler was using a car in the conduct of his employment, with full knowledge of his employer, still said car belonged to Filler individually and all the expenses of upkeep were met by Filler individually.

In the case of Phillips v. Western Union Tel. Co., 270 Mo. 1. c. 680, 195 S. W. 1. c. 687, in an opinion written by BROWN, C., it is said:

"In going into the consideration of this case it is well to have in mind that the boy who caused the injury which is the subject of the suit was not traveling on the street by permission of his co-defendant but in the exercise of a public right valuable to himself as a facility for gaining a livelihood as well as to his employer. Had he not possessed this right his employer could not have conferred it or taken it away. It went with his service as far as it was necessary to the performance of the duty involved and no further. In all other respects and for all other purposes it remained his own equipment for the service of which he was engaged. We cannot arbitrarily assume that by the terms of his employment, he was forbidden to seek, while on these trips, his own pleasure of profit in any manner consistent with the performance of his whole conventional duty, nor was the defendant under any obligation to so restrain his liberty of action, in the ordinary use of the public easement, although, should it authorize him to commit a wrong, as by inciting him to dangerous speed in a crowd,

it would be liable for the consequences upon familiar principles unconnected with any issue in this case, and having no connection with the relation of master and servant.''

In the above opinion, WOODSON, J. (dissenting) says:

''I dissent from the majority opinion for the reason that the same rule of law applies to the facts of this case as if the injury had been inflicted by an automobile instead of being caused by the messenger's body negligently coming in physical contact with the plaintiff. The messenger was performing the master's business at the time he injured the plaintiff, and had it not been for that fact he would not have been pursuing the journey which resulted in the injury, and the mere fact that he sidestepped a few feet to gratify some personal desire does not change the rule. In that case, as in this, he would have been about the master's business and the negligence in the one is identical with that in the other; the authorities cited abundantly so hold.''

While the Phillips case, supra, has never been directly overruled, still there is language in later decisions of the Supreme Court that we must accept as the last ruling case on the point involved that, at least by implication, overrules the Phillips case as applied to the fact as it appears in the case at bar.

In the case at bar the defendant Filler is admitted to have used his car in matters pertaining to his employment and the branch manager Wood specifically testified that he had no objection to Filler using the car in his business.

In the case of Margulis v. National Enameling & Stamping Co., 324 Mo. 1. c. 424, wherein all of the Judges of Division One of the Supreme Court concur, it is said:

''Where, with the express or implied assent of the employer, the employee uses a vehicle which the employee owns in the discharge of his duties, the employer will be liable for any injury occasioned by its negligent operation by the employee while acting within the scope of his employment. [42 C. J., sec. 900, p. 1128; 6 Labatt on Master and Servant, sec. 2282.]''

After a careful consideration of all cases cited in the briefs together with text comment and cases found in digests, we conclude that the law of the State of Missouri, according to the latest controlling cases, is correctly stated in Schmitt v. American Press (St. Louis Court of Appeals), 42 S. W. (2d) 969, 1. c. 972, as follows:

''No hard and fast rule can be laid down by which it would be possible to determine in every instance whether the driver of a motor vehicle, in the general employ of another, was acting within the scope of his employment at a given time, but rather each case is to be decided largely upon its own facts, merely keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer, or while about his business. [Borah v. Zoellner

Motor Car Co. (Mo. App.), 257 S. W. 145; Wrightman v. Glidewell, 210 Mo. App. 367, 239 S. W. 574.] Of course, it makes no difference upon the question of the employer's ultimate liability that the vehicle may belong to the servant himself, provided only that the servant was driving it at the time and with the actual or implied consent of his employer and in the discharge of the duties owed by the servant to him. [Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049; Burgess v. Garvin, 219 Mo. App. 162, 272 S. W. 108; Gordner v. St. Louis Screw Co., 201 Mo. App. 349, 210 S. W. 920.]''

Having reached the above conclusions as to the law, we, from a study of the evidence conclude that an issue of fact was made for the jury on the question of whether or not Filler, the employee, was acting within the scope of his employment at the time of the accident in question.

The case seems to have been fairly and orderly tried and properly submitted. Judgment affirmed. All concur.