Joseph MICELI (Plaintiff), Respondent,

v.

Kenneth WILLIAMS (Defendant), Appellant,

Arthur Cheeks, Defendant.

No. 29379.

St. Louis Court of Appeals. Missouri.

July 3, 1956.

Walsh, Hamilton & Corcoran, St. Louis, for appellant.

Meyer, Hoester & Coleman, by Hal B. Coleman, Clayton, for respondent.

MATTHES, Judge.

In this action for personal injuries, defendant Arthur Cheeks, although having filed an answer, defaulted, and made no appearance at the trial. The parties waived a jury, and the cause was tried before the court. At the conclusion of plaintiff's evidence, Williams moved for a judgment and stood thereon. In time the motion for judgment was overruled, and judgment was rendered in favor of plaintiff, and against both defendants for $3,000. Defendant Williams has appealed, and contends that the judgment cannot stand because: (1) the evidence failed to establish that Arthur Cheeks was acting within the scope of his employment, and for his employer, Williams, at the time the alleged negligent acts were committed; (2) the evidence was insufficient to fix liability under the humanitarian doctrine; (3) plaintiff was guilty of contributory negligence as a matter of law.

■ This being a nonjury case, we are required to review it upon both the law and the evidence as in suits of an equitable nature. We have no right to set aside the judgment unless it is clearly erroneous, and we must accord due regard to the opportunity of the trial judge to judge as to the credibility of the witnesses. Section 510.-

310 RSMo 1949, V.A.M.S.; Scott v. Kempland, Mo.Sup., 264 S.W.2d 349; Fulton v. City of Lockwood, Mo.Sup., 269 S.W.2d 1; Kraft v. Armentrout, Mo.App., 275 S.W. 2d 402.

On May 9, 1950, plaintiff was driving an automobile from a restaurant where he had eaten lunch to his place of employment and became involved in a collision with an automobile driven by Cheeks. Plaintiff was proceeding northwardly on Tara Lane, and was in the intersection of Tara Lane and McLaran, an east and west street, when the left rear wheel of his automobile was struck by the front end of the automobile being driven eastwardly on McLaran by Cheeks. Plaintiff was thrown out of his vehicle and injured.

Being of the opinion that the factual situation renders inapplicable the respondeat superior doctrine, we limit our review of the evidence to the question of agency.

Allen Mulholland was the only witness who gave testimony bearing upon this vital issue. Neither of the defendants testified, and plaintiff's testimony did not touch upon this question. Mulholland worked for defendant Williams as a station attendant at the latter's Standard filling station at Riverview and McLaran on May 9, 1950. Cheeks worked for Williams at the same station. Cheeks "would do washing, and greasing, and polishing, * * * and clean windows, and so on, * * *". He could wait on customers, but didn't use the cash register. Williams owned a 1932 model Chevrolet, used as a "push car or station car". Walter Lawson and Arthur Cheeks had driven the car in making service calls, "and like of that", and Williams had been present on prior occasions when Cheeks "would take the automobile on a call". On the stated date, at noontime or shortly thereafter, and in the absence of Williams, Cheeks left the filling station driving the Chevrolet automobile for the purpose of getting sandwiches for witness Mulholland and Cheeks. Lawson and Mulholland were present when Cheeks left the station. Wil-

liams had no set policy as to the number of attendants that were to remain at the station, "but he tried to have two of us there at all times to handle what business there was". Mulholland could not recall whether Cheeks had gone out for lunch on prior occasions. There was a store just across the street and occasionally the attendants would get lunch meat there and make sandwiches at the station, and on other occasions they would go out and buy sandwiches. Mulholland testified further:

"Q. Do you know whether or not Mr. Williams had ever been there at the service station when Arthur Cheeks had gone out to get sandwiches as he did on this occasion? A. No, I don't recall."

Counsel representing plaintiff and Williams stipulated that a party not present at the trial would testify that when he arrived at the scene of the collision he found sandwiches within the Chevrolet automobile and also upon the street.

■ Upon showing that the Chevrolet automobile involved in the collision was owned by the appealing defendant, and that at that time Cheeks was in the general employment of Williams, there arose a presumption that Cheeks was within the scope of his employment when the collision occurred. Guthrie v. Holmes (en Banc), 272 Mo. 215, 198 S.W. 854; State ex rel. Steinbruegge v. Hostetter (en Banc), 342 Mo. 341, 115 S.W.2d 802; Stone v. Reed, Mo.App., 247 S.W.2d 325. But, as stated in the Guthrie case, 198 S.W. 854, loc. cit. 858, "This, however, is as broad as the rule goes. From such a showing the plaintiff has a prima facie case resting upon this presumption. Presumptions of this character, like all presumptions as to a fact in a case, take flight upon the appearance in evidence of the real facts." In this case the facts bearing upon the purpose of the use of the automobile by Cheeks appeared from plaintiff's witness Mulholland, and upon such showing the presumption took

flight, and the issue must be determined on the facts in evidence. Stone v. Reed, supra, 247 S.W.2d 325, loc. cit. 330.

■ It is a firmly entrenched principle in this jurisdiction that in determining whether an employer is liable for his employee's tortious act, the test is not whether the act was committed during the term of employment, but whether it was done in the prosecution of the employer's business. If at the time of the occurrence the employee has departed from his work to fulfill a personal purpose not connected with his employment, the relation of master and servant is thereby temporarily suspended, and the master is not liable for his servant's acts during the period of suspension. This is so even though in carrying out his private mission the employee makes use of the employer's motor vehicle. Stone v. Reed, supra; Daily v. Maxwell, 152 Mo.App. 415, 133 S.W. 351; Byrnes v. Poplar Bluff Printing Co., Mo.Sup., 74 S.W.2d 20, loc. cit. 23, 24, and 25, and cases cited. The requirement that the act was committed by the servant in the prosecution of the master's business is not met and fulfilled upon a mere showing, " 'that the driver as incidental to his main purpose in using the vehicle for his own convenience may have in mind some purpose of the owner.' 60 C.J.S., Motor Vehicles, § 437, p. 1101. This is in accord with the rule stated in 2 Mechem, Agency, p. 1471, that 'The mere fact that the master's business is to be remotely promoted by the use, is not enough to make the master liable.' Schoenherr v. Hartfield, 172 App. Div. 294, 158 N.Y.S. 388; Temple v. Stafford, 227 N.C. 630, 43 S.E.2d 845." Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525, loc. cit. 530.

Is the master liable for the negligent acts of the servant while the latter is driving the master's automobile in going to or returning from meals? In Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 5, Sec. 3042, pp. 393, 394, 395, the rule is stated:

"Although the eating of food may be necessary to keep up an employee's vitality so as to enable him to perform the duties of his employment, ordinarily, a servant cannot be said to be on his master's business or acting within the scope of his employment while eating or on his way to eat.

"Accordingly the relation of master and servant must ordinarily be deemed suspended while he is going to and from his meals, particularly where the servant is to board himself, and, the master is not liable for the servant's negligence while so traveling to and from meals, although the servant is driving the master's machine."

In Huddy's Cyclopedia of Automobile Law, Ninth Edition, Vols. 7–8, Sec. 100, pp. 265, 266, this pronouncement is made:

"Ordinarily when the chauffeur is using his employer's automobile for the purpose of procuring his meals, he is not engaged in his master's business, and the master is not liable for his negligent acts on such a trip. * * * And if the servant is directed to use the machine in order that he may return to his work sooner or for some other reason beneficial to the employer, a finding that he is acting in the owner's business in so doing may be justified. Again, where transportation to and from meals *is part of the contract of employment,* a chauffeur returning from a meal to work may be deemed to be engaged in his master's business." (Italics supplied.)

See, also, Berry, Automobiles, Seventh Edition, Vol. 4, Sec. 4.377, p. 649.

This general concept has been accorded sanction and approval by our courts, Calhoon v. D. C. & E. Mining Co., 202 Mo. App. 564, 209 S.W. 318; Stone v. Reed, supra, wherein the factual situations involved the use of the master's vehicle in going to and from meals.

■ Application of the foregoing rule to the instant case brings us to the inevitable conclusion that Cheeks was not acting within the scope of his employment when the collision occurred. There was no testimony given or evidence produced that even remotely touched upon the terms and conditions under which Cheeks was employed by and working for Williams. Consequently there is no basis which would warrant a finding that the master was obligated to furnish his servant with food for the noonday meal, and in order that such obligation could be discharged, agreed to furnish a motor vehicle as was the situation in Wrightsman v. Glidewell, 210 Mo. App. 367, 239 S.W. 574. Neither is there any evidentiary basis justifying a finding that the master had agreed to furnish his servant a motor vehicle to enable the latter, at his expense, to secure his food, thereby shortening the time the servant was away from his work and correspondingly lengthening the time of service for the master. Chambers v. Kennedy, Mo. Sup., 274 S.W. 726. In fact the record before us does not even disclose that Cheeks had the express or implied consent or permission of his master to use the station wagon for the stated purpose. Williams was not present when his servant took the station wagon. No showing was made that it had previously been taken by Cheeks or either of the other attendants to enable them to go to and from meals or to procure food. Indeed, Mulholland's testimony was that, although Cheeks had taken the station car on prior occasions when his employer was present, it was for the purpose of making service calls "and like of that". We are mindful of Mulholland's testimony that Williams tried to have two attendants at the station at all times, but in the absence of proof relating to the terms of employment, or that it was necessary that the motor vehicle be used to accomplish that desire, we cannot say that such circumstance, standing alone, was sufficient to render the master liable under the respondeat superior doctrine.

In Calhoon v. D. C. & E. Mining Co., supra, the servant had been using the master's automobile for three weeks prior to the collision in going to and from his meals. The company had full knowledge of the servant's use of the automobile. At the time of the collision the servant was returning to the place of work for his supper. He testified that he was keeping the car at his home in order to get back and forth to the mines to attend to his duties. In reversing the judgment against the Mining Company the court pointed out that under the contract of employment the company was not required to furnish the servant transportation to and from his meals.

Miller v. Hoefgen, 51 N.M. 319, 183 P.2d 850, presents a situation more favorable to plaintiff than the instant facts. Defendant Rinner, Jr., was employed by defendant Hoefgen as a filling station attendant. Rinner worked approximately a half hour past his lunch time, and because of his being late Hoefgen instructed him to take Hoefgen's pick-up truck and go to lunch. While so doing Rinner was involved in the collision. On appeal the Supreme Court of New Mexico held that the proof did not establish that the servant was permitted to drive the master's automobile for the purpose of enabling him to reach his work earlier; that the use of the vehicle was an accommodation to the servant and not the result of the terms of the employment. The master was exonerated from liability.

To discuss other opinions dealing with the principle here involved would unduly prolong this opinion. The conclusion we have reached is fully supported by the reasoning of the courts in Stone v. Reed, supra; Byrnes v. Poplar Bluff Printing Co., supra; Halsey v. Metz, Mo.App., 93 S.W.2d 41; Wines v. Goodyear Tire & Rubber Co., supra; Van Hook v. Strassberger, Mo.App., 259 S.W.2d 399; Foster v. Campbell, 355 Mo. 349, 196 S.W.2d 147; Snyder v. Eriksen, 109 Kan. 314, 198 P. 1080 (Supreme Court of Kansas); Standard Oil

Co. v. Douglass, 18 Ala.App. 625, 93 So. 286.

In order for us to hold that Cheeks was in the prosecution of his employer's business, we would be required to indulge in speculation, conjecture, and guesswork because it is quite obvious that the record does not present facts justifying application of the respondeat superior doctrine.

Our holding on the question of agency renders it unnecessary to consider the other points raised by defendant Williams.

The judgment against the defendant Williams is reversed.

ANDERSON, P. J., and ELMO B. HUNTER, Special Judge, concur.