Barbara McCOY, Appellant,

v.

**HERSHEY CHOCOLATE COMPANY and Thomas Dale Loewen, Respondents.**

No. 46437.

Missouri Court of Appeals, Eastern District, Division Three.

July 26, 1983.

James S. Collins, II, St. Louis, for appellant.

Evans & Dixon, by Gerard T. Noce, St. Louis, for respondents.

REINHARD, Judge.

Plaintiff appeals after a jury verdict and judgment in favor of defendant Thomas Loewen in an automobile accident suit. We reverse.

The automobile accident in question occurred in the intersection of Sunset Office Drive and an unnamed street, when the road was wet and it was lightly drizzling. Although the evidence is sketchy, from photographs and testimony we are able to determine that Sunset Office Drive originates north of the intersection at the K–L Building. The street is divided by a wide grassy median; the southbound lane is at least fifty feet wide with parking on the west side. We are presented with no measurements as to how far south of the originating point of Sunset Office Drive the unnamed street intersects. However, one of the photographs admitted into evidence was taken 120 feet north of the intersection; thus, we know Sunset Office Drive extends at least this far. Moreover, the evidence reveals that the unnamed street is fifty feet wide.

Plaintiff's evidence was that she drove west from the parking lot at the eastern edge of Sunset Office Drive and turned left into the southbound lane of Sunset Office Drive. Plaintiff first saw defendant's vehicle approach from her right when she was approximately 20 feet from the intersection, travelling ten to twenty miles per hour. She next saw defendant's automobile as her car was halfway into the intersection. At this point, she alleges she applied her brakes, swerved to the left but was unable to avoid impact. Defendant struck plaintiff in the southeast section of the intersection, with the front of his vehicle hitting the right rear of her car.

According to defendant, he was travelling 10–15 miles per hour on the unnamed street as he approached the intersection. Plaintiff's automobile was, he estimated, travelling 30 miles per hour. Defendant first saw plaintiff immediately before impact. He applied his brakes, but was unsure how far he travelled from the time he first saw plaintiff until the time of impact. He further claims that plaintiff took no evasive action whatsoever.

The unnamed street has two eastbound lanes, one of which is used for parking. Testimony clearly established that vehicles were in the parking lane of Sunset Office Drive at the time of the accident. However, the number of automobiles is disputed, with plaintiff contending that there were two vehicles and the defendant claiming that they lined the entire block.

Based on this evidence, the jury returned a verdict in favor of defendant Loewen.

On appeal, plaintiff argues that submitting Instruction No. 8 on contributory negligence was error. This instruction submitted multiple negligent acts on the part of the plaintiff, including excess speed, failing to stop, swerve, slacken speed, slacken speed and swerve, or keep a careful lookout. Plaintiff argues that each of these disjunctive acts is not supported by the evidence.

■ It is well settled that each element of an instruction phrased in the disjunctive must be supported by substantial evidence. *Saupe v. Kertz,* 523 S.W.2d 826, 830 (Mo. banc 1975). Therefore, on submission of negligent failure to avoid a collision, the evidence must show that plaintiff possessed the means and ability to avoid the accident by *each* and *every* act described. *Bunch v. McMillian,* 568 S.W.2d 809, 811 (Mo.App. 1978). The evidence must establish sufficient time and distance, considering the movements and speeds of vehicles, to enable plaintiff to take effective action in avoidance. *Saupe v. Kertz,* 523 S.W.2d at 830. The theory of failure to keep a careful lookout, therefore, becomes submissible when the plaintiff *could* have seen defendant's vehicle and taken effective action. *Hill v. Barton,* 579 S.W.2d 121, 128 (Mo. App.1979).

■ We have concluded defendant failed to establish substantial evidence supporting the submission of the instruction. Defendant's unambiguous testimony was that the entire right side of Sunset Office Drive, from the beginning to the intersection, was

lined with automobiles. Based on this testimony, there is absolutely no evidence that plaintiff could have seen defendant in time to avoid the collision; no evidence that she could stop, swerve or slacken her speed and avoid the accident after the likelihood of impact was apparent.

The defendant would have this court rely on plaintiff's evidence that only two vehicles were parked on the street.[1] However, we find defendant's theory is at war with his own testimony that vehicles lined Sunset Office Drive. Indeed, defendant's testimony as to the location of parked vehicles constitutes a judicial admission of a material fact. *Jockel v. Robinson,* 484 S.W.2d 227, 231 (Mo.1972). The law in this matter is clear:

> [I]f a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact within his own knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding.

*Hecker v. Schwartz,* 426 S.W.2d 22, 25 (Mo. 1968). *See Taylor v. Keirn,* 622 S.W.2d 778, 783 (Mo.App.1981).

This being the case, the court erred in giving the instruction and the judgment is reversed as to defendant Loewen.

■ Plaintiff also complains about the admission of a police diagram, which constituted a portion of the police officer's report. The court admitted only the diagram, and deleted objectionable parts before submission to the jury. In considering this matter, we note that the admissibility of this evidence falls within the trial court's discretion. *Gant v. Hanks,* 614 S.W.2d 740, 744 (Mo.App.1981). Moreover, without any references on the diagram as to the point of impact, we find *no error occurred in its* admission.

---

1. Defendant does not base his claim for submission of the instruction on plaintiff's testimony that she saw him 20 feet from the intersec-

tion. There is no evidence that plaintiff could avoid the accident at this point.

We next consider plaintiff's contention that the court erred in directing a verdict at the close of the evidence in favor of defendant Hershey Chocolate Company. Recovery was sought against the company under the doctrine of respondeat superior. The evidence showed that defendant Loewen was district sales manager at Hershey Chocolate Company and managed the company's Watson Road office. Pursuant to Loewen's employment contract with Hershey, the company furnished him with an automobile and paid his lunch expenses each day to the extent of $4.00. He received this amount whether or not he spent it. The company has increased this daily amount to reflect inflation of meal expenses.

On the date of the accident, Loewen left his office for lunch at the Steak N Shake, which was located approximately four blocks from his office; the accident occurred en route. The evidence revealed that by using the company vehicle to go to and from lunch, Loewen was able to more expeditiously return to work than had he walked to the restaurant. Moreover, on occasion Loewen would, during the lunch hour, examine store stock and confer with customers. However, on this particular day, there was no evidence of any such purpose.

This is the extent of the evidence as to the master-servant relationship and scope of Loewen's employment during his lunch period. Is this evidence sufficient to make a jury case as to whether or not the employee was acting within the scope of his employment at the time of the accident? Yes.

There is a presumption that the employee was acting within the scope of his employment whenever the vehicle is owned by the employer and driven by the employee. However, this presumption evaporates upon the appearance of the real facts in the case. *Stone v. Reed,* 247 S.W.2d 325, 330 (Mo.App. 1952). This court said in *Stone:*

> The general rule is that the relation of master and servant is suspended while the servant is going to and from meals, even though he is driving the master's car at the time, unless there is some special direct benefit to the master from the use of said car. In Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 5, Sec. 3042, we find the rule stated as follows: " * * * the relation of master and servant must ordinarily be deemed suspended while he is going to and from his meals, *particularly where the servant is to board himself,* and, the master is not liable for the servant's negligence while so traveling to and from meals, although the servant is driving the master's machine." (emphasis ours).

*Id.* at 332.

In *Wrightsman v. Glidewell,* 210 Mo.App. 367, 239 S.W. 574 (1922), where the facts relating to the employment are somewhat similar to ours, the court determined that an employee's accident while driving the owner's vehicle to his home for a meal, created a jury question as to the scope of employment. In reaching this conclusion, the court relied upon the existence of an employment contract which provided both for the use of the automobile and for the payment of board.

The case principally relied upon by Hershey is *Miceli v. Williams,* 293 S.W.2d 136 (Mo.App.1956). There the trial court found for the plaintiff against both the employee and the employer. At the time of the collision, the employee was driving his employer's automobile from a restaurant where he had eaten lunch to his place of employment. This court reversed as to the employer, finding that the employee's activity was not within the scope of employment. In reaching that conclusion, Judge Matthes, speaking for this court, said:

> There was no testimony given or evidence produced that even remotely touched upon the terms and conditions under which Cheeks was employed by and or working for Williams [at the time of the accident]. Consequently, there is no basis which would warrant a finding that the master was obligated to furnish his servant with food for the noonday meal, and in order that such obligation could be

discharged, agreed to furnish a motor vehicle as was the situation in *Wrightsman Glidewell,* 210 Mo.App. 367, 239 S.W. 574. Neither is there any evidentiary basis justifying a finding that the master had agreed to furnish his servant a motor vehicle to enable the latter, at his expense, to secure his food, thereby shortening the time the servant was away from his work and correspondingly lengthening the time of service for the master. *Chambers v. Kennedy,* Mo.Sup. 274 S.W. 726.

*Id.* at 139.

A reading of the above-cited cases leads us to the conclusion that a jury question was presented in the present case. There is evidence of a contract to furnish both meals and transportation and further evidence that by using the master's vehicle, the time Loewen used for his lunch period was shortened.

Judgment reversed.

CRANDALL, P.J., and CRIST, J., concur.